Albert GUEORY

v.

Robert E. HAMPTON (Chairman of the United States Civil Service Commission), et al., Appellants.

No. 73-1842.

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1974.

Decided Sept. 9, 1974.

Rehearing Denied April 3, 1975.

Stanton R. Koppel, Atty., Dept. of Justice, with whom Irving Jaffe, Acting Asst. Atty. Gen., Harold H. Titus, Jr.,

U. S. Atty., at the time the brief was filed, and Leonard Schaitman, Atty., Dept. of Justice, were on the brief, for appellants. Earl J. Silbert, U. S. Atty., Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, and Nathan Dodell, Asst. U. S. Atty., also entered appearances for appellants.

Ellen M. Scully, Washington, D. C., with whom Edward M. Basile, Washington, D. C., was on the brief, for appellee.

Before EDWARDS,* United States Circuit Judge for the Sixth Circuit, and TAMM and WILKEY, Circuit Judges.

TAMM, Circuit Judge:

Appellee Gueory filed an action for a declaratory judgment in the district court seeking a determination that his removal from employment with the United States Postal Service violated section 752.104(a) of the Civil Service Regulations. The district court granted plaintiff's motion for summary judgment, concluding that as a matter of law there must be a specific showing as to how plaintiff's criminal conduct, which was the asserted justification for his removal, deleteriously affected Gueory's suitability for employment within the meaning of the Civil Service Regulations. The court then ordered the case remanded to the Civil Service Commission for further findings. Appellants seek review of that order, and for the reasons stated below, we reverse the decision of the district court.

I

On January 25, 1970, Mr. Gueory was arrested and charged with homicide arising out of a late night street incident. Indicted for second degree murder, Gueory went to trial in the district court on August 26, 1970. After two days of trial, he pleaded guilty to a reduced charge of manslaughter and was given a suspended sentence of two to seven years and placed on probation for five years. United States v. Gueory, Crim. No. 835–70 (D.D.C. Nov. 23, 1970). Appellee admits that he shot and killed a man. Appellee's Br. at 4.

On September 24, 1970, Gueory was sent notice of his proposed· removal from his position as Foreman, Laborers and Janitors, United States Post Office at Washington, D. C., based upon his conviction for manslaughter.[1] Gueory, a veterans. preference eligible employee, could be removed "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7512(a). The regulation, 5 C.F.R. § 752.104(a), promulgated under the statute, tracks the statutory standard and then continues that among the reasons that would constitute cause are the reasons listed for the disqualification of a prospective applicant in section 731.201. Section 731.201 provides that the Commission, *inter alia*, could instruct an agency to remove an appointee for:

> . . . . . .
>
> (b) Criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct,
>
> . . . . . .

On October 16, 1970, the Postal Service Regional Director notified him that the charges were "fully supported by the evidence" which warrant "your removal to promote the efficiency of the service." J.A. at 26. Gueory appealed his removal to the Assistant Postmaster General. On December 17, 1970, Gueory appeared at a hearing, represented by counsel, where he was allowed to testify and to confront and cross-examine man-

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

1. Joint Appendix at 23 (hereinafter J.A.). Gueory was also suspended from active duty at t..at time pending action on the charge. J.A. at 23. That suspension was subsequently reversed by the Civil Service Commission Appeals Examining Office on the ground that no emergency existed to justify the suspension, since the Postal Service had retained him on active status for seven months after his arrest. J.A. at 65. The Appeals Office awarded him pay for the period from his suspension until the effective date of his removal.

agement's witness, J.A. 28–35. On April 14, 1971, the Assistant Postmaster General sustained Gueory's removal, finding that "the charge is supported by substantial evidence of record" and that the arguments advanced in favor of leniency did not mitigate the seriousness of Gueory's actions. J.A. at 38.

Gueory next appealed to the Civil Service Commission Examining Office. He received a full hearing on July 16, 1971, where he again testified and was represented by counsel. J.A. at 40–60. While admitting his manslaughter conviction, he argued that in view of his work record, background, and reputation, his removal would not promote the efficiency of the Service. Moreover, he asserted that the Postal Service must demonstrate specifically the relationship between his criminal conduct and the efficiency of the Service. Tr. at 46–47, J. A. at 57–58.

Plaintiff, however, gave conflicting testimony about the circumstances surrounding the fatal incident. In his argument during the December 17th hearing, Gueory's attorney had admitted that his client had a few beers with his wife before returning home the evening of the shooting. According to his attorney, Gueory then left home at 3:00 a. m. after a domestic quarrel, and the shooting occurred outside his home thereafter. J.A. at 31. During his testimony before the Civil Service Appeals Examining Office, however, Gueory did not mention stopping off for beers nor the domestic quarrel, but testified he had merely left to get a cup of coffee immediately after arriving home with his wife. Tr. at 17, J.A. at 41.

On August 11, 1971, the Appeals Examining Office upheld plaintiff's removal. The appeal examiners found "reason to question Mr. Gueory's credibility," J. A. at 71, and concluded that "Gueory did kill a fellow human being when there was no necessity for the killing to have occurred." J.A. at 72. Holding that "there is no requirement in the law or the Civil Service regulations that an agency must state in what way a proposed removal will promote the efficiency of the service," the appeal examiners found "nothing improper in an agency's proposing the removal of one of its employees because he resorted to an act of such violence that he deprived another human being of his life." Hence, the agency's action "was not arbitrary, unreasonable or capricious, but was for such cause as will promote the efficiency of the service." *Id.*

Gueory appealed to the Civil Service Board of Appeals and Review. On December 3, 1971, the Board affirmed, noting the contradictions in Gueory's testimony, and concluded that "the removal action was for such cause as will promote the efficiency of the service within the meaning of that language in Section 752.104(a) of the Civil Service Regulations." J.A. at 101.

Plaintiff then initiated this present action in district court to review the Civil Service Commission's final decision. The district court granted Plaintiff's summary judgment motion and found as a matter of law that there must be a specific showing of how the manslaughter conviction adversely affected Gueory's suitability for employment under Civil Service Regulations. The court remanded the case to the Civil Service Commission so that it could make a finding as to whether the United States Postal Service met its burden of establishing the specific connection. Gueory v. Hampton, C.A. 410–72 (D.D. C. April 19, 1973), J.A. at 17. This appeal followed.

II

Appellee makes the threshold argument that the district court's order is not a final order within the meaning of 28 U.S.C. § 1291 and is therefore not appealable at this time. Appellee argues that since the district court ordered a remand to the Civil Service Commission, there exists no appealable final decision. Appellee's Br. at 9–10. We disagree.

Under section 1291, an appeal may be taken from any final order of a district court. However, as the Supreme Court has repeatedly held, "the requirement of finality is to be given a 'practical rather than a technical construction.'" *See, e. g.,* Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964), *quoting* Cohen v. Beneficial Industrial Loan Corp., 337 U. S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Thus, orders which remanded causes to the appropriate administrative or executive agency have been considered final and appealable by the courts. *See* Citizens to Preserve Overton Park v. Brinegar, 494 F.2d 1212 (6th Cir. 1973); Cohen v. Perales, 412 F.2d 44, 48–49 (5th Cir. 1969), rev'd. on other grounds, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

■ Under such a practical construction, the district court's order in this case is clearly final. The remand to the Civil Service Commission is appealable because if review were not allowed now, the Government would probably never be able to test the legal correctness of the finding that in a dismissal for "criminal conduct" there must be an additional statement of exactly how the conduct diminishes the efficiency of the service.

### III

■ In turning to the merits, we must at the outset be cognizant of the limited review function of both the district court and court of appeals in employee adverse action litigation. Our prior opinions establish that the judicial review of civil service firings should be governed by the principles generally applicable to judicial review of administrative action. Polcover v. Secretary of Treasury, 155 U.S.App.D.C. 338, 477 F.2d 1223 (1973); Scott v. Macy, 131 U.S.App.D.C. 93, 402 F.2d 644, 647 n.6 (1968). Discretion primarily lies in the hands of the administrative agencies involved, and the courts will not substitute their own judgment for that of the agency's. Review is thus limited to whether the agency denied the employee his appropriate procedural rights and whether the decision to remove the employee was arbitrary and capricious. Studemeyer v. Macy, 116 U.S.App.D.C. 120, 321 F.2d 386 (1963); Pelicone v. Hodges, 116 U.S.App.D.C. 32, 320 F.2d 754 (1963).

In the instant case, appellee Gueory was plainly afforded the entire panoply of procedural rights. As amply documented in the record, appellee vigorously pressed his case, assisted by counsel, through three separate reviews of the original decision to dismiss him, including two oral hearings.

Consequently, the ultimate question before us is whether Gueory's dismissal, without an explicit showing of the deleterious effect his criminal conduct had on the efficiency of the service, was arbitrary and capricious.

The appropriate statute, 5 U.S.C. § 7512(a), requires that adverse action be taken only for cause which will promote the efficiency of the service. In Gueory's case, the Postal Service invoked interpretive regulations which set out criminal conduct as a sufficient cause that would promote the efficiency of the service,[2] 5 C.F.R. §§ 752.104(a), 731.-201(b). The question, therefore, for judicial review is whether those interpretive regulations are valid, and if so, whether appellee's conduct falls within the ambit of the regulation.

■ Our review of an interpretive regulation is limited. Such interpretive rules are "'of controlling weight unless [they are] plainly erroneous or inconsistent with the regulation.'" Immigration and Naturalization Service v. Stanisic, 395 U.S. 62, 72, 89 S.Ct. 1519, 1526, 23 L.Ed.2d 101 (1969), *quoting* Bowles v. Seminole Rock & Sand Co., 325 U.S.

---

2. The parties do not dispute that Gueory's removal was based upon "criminal conduct," not any of the other grounds in the interpretive regulation.

410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). Under that standard, the inclusion of criminal conduct as a "cause which will promote the efficiency of the service" hardly seems plainly erroneous, inconsistent, arbitrary or capricious. Certainly, an employee's conviction of a crime casts grave doubt on his reliability, trustworthiness and ethical conduct, all of which naturally affect the efficiency of the service. *See* Embrey v. Hampton, 470 F.2d 146 (4th Cir. 1972); Rodriguez v. Seamans, 150 U.S.App.D.C. 1, 463 F.2d 837, cert. denied, 409 U.S. 1094, 93 S.Ct. 704, 34 L.Ed.2d 664 (1972).

In concluding, however, that this logical nexus exists between the interpretive regulation and the statutory standard, we do so with caution. We readily recognize that the nexus may become attenuated if an agency attempts to invoke the regulation for activities of a minor nature, such as a traffic citation. We leave the difficult task of drawing a line of demarcation for a future time. No matter where that line is drawn, it is clear that manslaughter, the unlawful taking of a human life, falls in the area where the nexus is strong and secure.[3]

Appellee contends that this case is controlled by our decisions in Scott v. Macy, 121 U.S.App.D.C. 205, 349 F.2d 182 (1965), and Norton v. Macy, 135 U.S.App.D.C. 214, 417 F.2d 1161 (1969). In *Scott*, we held by a 2–1 vote that the Civil Service Commission's conclusion that the appellant was prospectively ineligible for Government employment based on a determination of "immoral conduct" and "homosexual conduct" could not stand. 349 F.2d at 185. In *Norton*, a divided panel held that a NASA employee's discharge for "immoral conduct" based upon a record of an off-duty homosexual incident did not suggest any

reasonable connection between the evidence and the efficiency of the service. 417 F.2d at 1167.

We find those cases distinguishable, not dispositive. As the Civil Service Commission recognized in its opinion, "[t]he cases cited by [Gueory] as requiring a showing of the connection between the alleged misbehavior and a removal to promote the efficiency of the service did not involve convictions of a crime." J.A. at 101. In all cases involving criminal conduct, the reviewing courts have uniformly upheld the dismissals as promoting the efficiency of the service. In Taffel v. Hampton, 463 F.2d 251 (5th Cir. 1972), for example, the Fifth Circuit upheld the dismissal of a Postal Service employee who was arrested for shoplifting, finding sufficient evidence to promote the efficiency of the service. *See also* Embrey v. Hampton, *supra,* 470 F.2d 146; Rodriguez v. Seamans, *supra,* 463 F.2d 837; Vigil v. Post Office, 406 F.2d 921 (10th Cir. 1969).

Moreover, the conclusion in *Norton* that the agency was required to do more than just demonstrate that "immoral conduct" had occurred was buttressed by arguing that the standard was both vague and overbroad and required the supervising agency to make moral pronouncements about its employees' activities. 417 F.2d at 1163–1165. The court also recognized that enforcement of such a standard would require the agency to intrude into the employee's privacy and would attach a social stigma or "badge of infamy" to that employee. *Id.* at 1164–1165. Such problems do not confront us here. The only moral judgment was made when Congress enacted the District of Columbia Code.[4] Gueory's conviction is on the public record, and if he wears any badge of infamy, he

---

3. The fact that Gueory only received a suspended sentence and probation does not destroy the nexus. Firings based on criminal arrest even where the employee was subsequently acquitted have been upheld. *See* Polcover v. Secretary of Treasury, 155 U.S. App.D.C. 338, 477 F.2d 1223, 1231–1232 (1973); Finfer v. Caplin, 344 F.2d 38, 41

(2d Cir.), cert. denied, 382 U.S. 883, 86 S.Ct. 177, 15 L.Ed.2d 124 (1965).

4. Gueory was convicted of violating 22 D.C. Code § 2405. United States v. Gueory, Crim. No. 835–70 (D.D.C. Nov. 20, 1970), J. A. at 22.

pinned it on himself by committing and then pleading guilty to a criminal homicide.

■ Appellee also argues that in applying the interpretive regulations against him, the Service invoked an unconstitutional irrebuttable presumption against him. In support of that contention, he cites cases including the Supreme Court's recent decisions in Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), and Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). It is true that the Court has condemned certain statutory presumptions as violative of due process. Appellee, however, woefully misconstrues the scope of these holdings. The Court strongly indicated that procedural due process is violated when these statutory presumptions are irrevocably applied against an individual who receives *no opportunity for refutation. See* 412 U.S. at 446-447, 93 S.Ct. 2230; 405 U.S. at 657-658, 92 S.Ct. 1208. *See also* Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Here, no such irrebuttable presumption was employed against appellee. As amply demonstrated in Part I *supra,* even if the interpretive regulation set up a presumption, Gueory was given opportunity after opportunity, hearing after hearing to rebut it. We find no due process violation.

### IV

■ In light of our conclusion that the Service properly applied a rational interpretive regulation, we hold that the district court erred by ruling that as a matter of law a more specific showing was required. We recognize again that a mere incantation by an agency of the interpretive regulation in a situation involving less serious criminal conduct *might* necessitate a different result. However, under these circumstances, where the nexus between the regulation as applied and the statutory standard is clear, the reviewing courts should not disturb the discretionary determinations of the agency and Commission charged by Congress with primary responsibility in this area. The district court's order, therefore, is vacated and the case is remanded with instructions to enter judgment for the defendants.

It is so ordered.

### On Appellee's Suggestion for Rehearing *En Banc.*

Before BAZELON, Chief Judge, WRIGHT, McGOWAN, EDWARDS *, U.S. Circuit Judge for the Sixth Circuit, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

### ORDER

PER CURIAM.

It appearing that appellee's suggestion for rehearing en banc having been transmitted to the full Court and there not being a majority of the Judges in regular active service in favor of having this case reheard *en banc,* it is

Ordered by the Court en banc that the aforesaid suggestion for rehearing *en banc* is denied.

Statement of Chief Judge Bazelon as to why the case should be reconsidered *en banc.*

BAZELON, Chief Judge.

Appellee Gueory was dismissed by the Postal Service after pleading guilty to a charge of manslaughter in the slaying of a man outside his home in southeast Washington, D. C. As a veteran's preference eligible employee, Gueory could be removed "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7512(a). This statutory standard has been interpreted by the Civil Service Commission in regulations which provide that "among the reasons that constitute 'such cause as will promote the efficiency of the service' " is "crimi-

---

* Sitting by designation pursuant to Title 28 U.S. Code Section 291(a).

nal, infamous, dishonest, immoral or notoriously disgraceful conduct." 5 C.F.R. §§ 752.104(a); 731.201(b). Gueory's firing was predicated on his conviction for manslaughter.

In appeals from the initial decision within the Postal Service and before the Civil Service Commission,[1] Gueory did not contest that he had killed a man. Instead he relied on a number of "mitigating factors" which, he contended, counteracted the adverse inferences that might ordinarily be drawn from an admission of guilt to a crime of this seriousness: 1) The man Gueory shot was approaching him in a menacing manner, apparently intent on robbing or assaulting him. The incident took place at night in a "high-crime" neighborhood.

2) The district judge imposed a suspended sentence and placed Gueory on five years' probation. 3) Prior to this offense, Gueory had a "clean record."[2] 4) He had worked for the Postal Service for nine years, during which he had been promoted from janitor to laborer to supervisor of janitorial staff.[3] His presentation included a letter from his immediate superior, John Q. Adams, commending him as "very polite, easy going, honest, reliable, efficient and well liked by his co-workers and superiors."[4] 5) Gueory continued to work for eight months after the killing and for one month after he entered his guilty plea, apparently at the same level of proficiency and without deterioration of his relationships with others on the job.[5] 6) He offered 28 letters attesting to his good character from friends and co-workers.[6]

Both the Postal Service and the Civil Service Commission concluded that these reasons offered for leniency did not "mitigate the seriousness of [the] actions as charged."[7] They further concluded that Gueory's dismissal was "for such cause as will promote the efficiency of the service."[8] This conclusion was not supported by evidence other than that Gueory had killed another "unnecessarily" or by any specification of employment-related concerns which might be relevant to Gueory's case. The Civil Service Commission expressly found that "there is no requirement in the law or the Civil Service regulations that an agency must state in what way a proposed removal will promote the efficiency of the service."[9]

> They was all sympathetic to my problem at the particular time, pertaining to the incident. I saw no effect at all that it would have had. And really, from my own just personal opinion and personal point of view it seemed like I had a better relationship because I don't want it to appear that the incident would make me have status with them; but they was sympathetic because they understood the area and the situation
>
> . . . ..              .
> App. 46.

1. Gueory's appeal from the initial decision of the Regional Director was decided April 14, 1971, by the Assistant Postmaster General. App. 37. Gueory then appealed to the Civil Service Commission, where his case was reviewed first by the Appeals Examining Office, App. 61, and then by the Board of Appeals and Review, App. 91, from which there was no further right of administrative appeal.

2. App. 97 (Gueory's testimony before the Civil Service Commission, as reproduced in the opinion of the Board of Appeals and Review).

3. In proceedings before the Civil Service Commission, the Government stipulated that Gueory's employment record was "satisfactory." App. 23.

4. App. 75.

5. There is no indication on the record that his effectiveness was diminished during this period. At his hearing before the Appeals Examining Office of the Civil Service Commission, Gueory characterized his experience this way:

   > I had continued [after the killing] among the employees that I supervised and those that were supervising over me. I had a good, excellent relationship with them.

6. The Government offered nothing to contradict these testimonials.

7. Decision of April 14, 1971, App. 38. *See* Decision of August 11, 1971 (Civil Service Appeals Examining Office), App. 72.

8. Decision of August 11, 1971 (Civil Service Appeals Examining Office), App. 72; Decision of December 3, 1971 (Civil Service Commission Board of Appeals and Review), App. 101. *See* Decision of April 14, 1971, App. 38.

9. App. 72.

On appeal from the final decision of the Civil Service Commission, the district court concluded that "as a matter of law there must be a specific showing how the criminal conduct in question had a deleterious effect on plaintiff's suitability for employment within the meaning of Section 752.104(a) of the Civil Service Regulations," and remanded to the Civil Service Commission "to make a finding as to whether the United States Postal Service has met the burden of establishing the connection between the criminal conduct and plaintiff's suitability for employment." The Government brought this appeal, in which a division of this court unanimously reversed the district court's judgment, and this court denied rehearing and suggestion for rehearing en banc. Plagued by doubts both as to the result in this case, and as to the breadth of the court's opinion, I wish to explain briefly why I think the decision should be reconsidered en banc.

In Norton v. Macy,[10] which involved the same statutory provision and regulation in question here, we said:

> [W]e have recognized that, besides complying with statutory procedural requirements, the employer agency must demonstrate some "rational basis" for its conclusion that a discharge "will promote the efficiency of the service."

The court's opinion in the present case rests on the premise that the connection between Gueory's crime and the efficiency of the Service was "clear" and therefore needed no further demonstration. The absence of any analysis ·by the agencies makes testing this premise difficult. Several possible job-related factors are suggested in the Government's briefs.[11] The court's opinion does not rely on these, in deference presumably to the rule that reviewing courts "cannot 'accept appellate counsel's post hoc rationalizations for agency action'; for an agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.' "[12] That rule is fully applicable here, as the work-relatedness determination required by the statute is not amenable to "independent judicial ascertainment as [a] '[question] of law.' "[13] I make use of the Government attorneys' presentation only to suggest the basis of my view that the nexus in this case is less than obvious.

There is no assertion that Gueory presented a risk of danger to other employees. He had never before been convicted of a violent act, and his immediate supervisor, among others, declared a belief that "he would do bodily harm only in self defense."[14] Further, as the Government's brief acknowledges, "the fact that the employee was not jailed means that the sentencing judge did not consider the man to pose a threat of further violence to the community."[15] The Government's brief does suggest that the continued employment of Gueory might have lessened public respect for the agency, reducing its effectiveness, and discouraging new applicants for jobs. But Gueory's crime, given the circumstances under which it was committed, was not the sort likely to provoke significant public indignation. Moreover, since Gueory's position apparently involved no regular contact with the public served, there can be little support for an "embarrassment-to-the-agency" rationale discussed in Norton.[16] On the contrary, it might even appear that keeping Gueory on, despite his conviction, would actually have enhanced the

---

10. 135 U.S.App.D.C. 214, 417 F.2d 1161, 1164 (1969).

11. Brief for Appellant Robert E. Hampton, at 14–16.

12. FPC v. Texaco, Inc., 417 U.S. 380, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974), citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); SEC v. Chenery, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

13. Local 833, United Auto Workers v. NLRB, 300 F.2d 699, 705 (D.C.Cir. 1962), cert. denied sub nom. Kohler Co. v. NLRB, 382 U.S. 836, 86 S.Ct. 82, 15 L.Ed.2d 79 (1965), citing Chae-Sik Lee v. Kennedy, 111 U.S.App.D.C. 35, 294 F.2d 231, 234 (D.C.Cir.), cert. denied 368 U.S. 926, 82 S.Ct. 362, 7 L.Ed.2d 190 (1961).

14. App. 75.

15. Brief for Appellant Robert E. Hampton, at 16.

16. Supra note 8, at 1167.

image of the postal service as an employer sensitive to the individual circumstances and potential of its employees.[17] The Government's brief also suggests that Gueory's crime might have caused him to lose the respect of both superiors and subordinates, undermining his effectiveness. Gueory's numerous and favorable references from superiors and co-workers and his unblemished work record before and after his conviction suggest the contrary.

Even if the Service might have stood initially on the fact of the crime alone, the strength of Gueory's showing demanded something in the nature of a rebuttal from the agency, a reasoned presentation going directly to the efficiency issue. Judicial review of administrative decisions contemplates a showing by the agency sufficient to allow the courts "to determine if [the agency] acted within the scope of [its] authority and if [the agency's] action was justifiable under the applicable standard."[18] The exact nature of the showing required depends, of course, on a number of variables, including the strength and complexity of evidence offered by parties before the agency. International Harvester Co. v. Ruckelshaus[19] expressed this relationship through the concept of a shifting "burden of proof."[20] The concept broadly illuminates the responsibility of an agency in cases such as this, where evidence introduced by a party tends to refute a presumption created by administrative rule.[21]

I find further support for this result in a detailed consideration of our decision in *Norton.* In that case we dealt with a dismissal based on homosexual activities under a portion of the same regulation covering "immoral conduct." The agency had made at least some attempt to isolate a nexus, claiming that "continued employment of appellant might 'turn out to be embarrassing to the agency.' "[22] We met this contention with the following observation:

A claim of possible embarrassment might, of course, be a vague way of referring to some specific potential interference with an agency's performance; but it might also be a smokescreen hiding personal antipathies or

17. For a discussion of the Postal Service's humanitarian obligations with respect to ex-offenders under existing policies, see text accompanying notes 29–30 *infra.*

18. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). *See* Kennecott Copper Corp. v. EPA, 149 U.S.App.D.C. 231, 462 F.2d 846, 849 (1972); Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 597 (1971).

19. 155 U.S.App.D.C. 411, 478 F.2d 615, 643 (1973).

20. My quarrel with the majority in that case did not go to the concept itself but to its use as a screen for "a substantive evaluation of the Administrator's assumptions and methodology" in an area involving complex technological issues. International Harvester Co. v. Ruckelshaus, *supra,* 478 F.2d at 651 (Bazelon, C. J., concurring in the result).

21. Although I do not think it is necessary to go beyond the guidelines of administrative review, due process considerations point toward a similar conclusion. The court's opinion brushes past appellee's constitutional arguments, which appear to be based exclusively on the Supreme Court's irrebuttable presumption cases, with the observation that "even if the interpretive regulation set up a presumption, Gueory was given opportunity after opportunity, hearing after hearing to rebut it." 167 U.S.App.D.C. —— at ——, 510 F.2d 1222 at 1227. The "irrebuttable presumption cases," *e.g.,* Board of Education v. LaFleur, 414 U.S. 524, 94 S.Ct. 791, 38 L.Ed.2d 702 (1974); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), all involved the failure to provide any opportunity to refute the appropriateness of the classification mandated by rule or statute. But this analysis ignores the fundamental concern of *LaFleur* and cases like it: the lack of a determination sensitive to the circumstances of each case. Meeting this concern requires not only that the agency take evidence, allowing the individual to present his side, but also that it give full and reasoned consideration to that evidence in arriving at its result. "The Executive may have discretion in hiring or firing, but '[d]iscretionary power does not carry with it the right to its arbitrary exercise.' " Scott v. Macy, 121 U.S.App.D.C. 205, 349 F.2d 182, 184 (1965). Without a further showing by the Service, I am simply unable to conclude that it has made a decision responsive to the contours of this particular case.

22. 417 F.2d at 1167.

moral judgments which are excluded by statute as grounds for dismissal.[23]

The latter possibility led us to hold that "the unparticularized and unsubstantiated conclusion that such possible embarassment threatens the quality of the agency's performance is an arbitrary ground for dismissal." [24]

On its face, a conclusion of unfitness which does nothing more than restate the applicable standard seems hardly less arbitrary. *Norton* and its predecessor *Scott v. Macy*[25] are distinguished on the ground that in the present case there is no danger of the agency's intruding its own moral judgment on the activities of its employee, attaching "a social stigma or 'badge of infamy' to that employee." [26] Gueory was found guilty of conduct which Congress itself had prohibited, and stigmatized through provision for criminal sanctions. "[I]f he wears any badge of infamy," the court's opinion proclaims, "he pinned it on himself by committing and then pleading guilty to a criminal homicide." [27] But as the Fifth Circuit has suggested in a simi-lar case, agency action in response to "criminal conduct" carries its own potential for abuse.[28] Dismissal may be administered as a penalty for criminal behavior, although by law it is the judiciary and not the Postal Service, or any other arm of the executive, which is charged with the punishment of criminal offenses. And when misused in this way, dismissal represents a strong sanction indeed. Combined with a criminal record, it not only disqualifies the affected employee from other jobs in Government but also severely damages his prospects for private employment.

This last point is related to the failure of both the Postal Service and the Civil Service Commission to consider Gueory's dismissal in light of national policy covering the employment of "rehabilitated offenders." It is not open to serious dispute that the full rehabilitation of offenders requires legitimate employment. Yet until recently at least there was widespread resistance to employing ex-offenders in Government as well as in private business.[29] In 1966, the Civil

23. *Id.*

24. *Id.*

25. 121 U.S.App.D.C. 205, 349 F.2d 182 (1965).

26. 167 U.S.App.D.C. ——, 510 F.2d 1222 at 1226.

27. *Id.* 167 U.S.App.D.C. at ——, 510 F.2d at 1226.

28. Embrey v. Hampton, 470 F.2d 146 (5th Cir. 1972). Despite its recognition of this danger, the *Embrey* court upheld the dismissal of a Postal Service employee who had been convicted of fraud in an application for an F.H.A. loan. In that case, as in the one before us, there were "reasons for leniency" which included 21 years of exemplary service with the Post Office and a decision by the district judge in the criminal proceeding not to impose sentence, but the court refused to intervene on the ground that the determination about the efficiency of the Service belonged to the agency not the courts. The principle is certainly a sound one, but it does not require the courts to rest content with agency reasons which are not sufficient to insure that a determination responsive to the individual *facts of each has indeed been made.* The same observation leads me to attach little weight to the decision in Vigil v. Post Office of the United States, 406 F.2d 921 (10th Cir. 1969), which upheld the firing of a postal worker convicted of homosexual acts.

The court's opinion also draws support from Rodriguez v. Seamans, 150 U.S.App.D.C. 1, 463 F.2d 837 (1972). Whatever else may be said about *Rodriguez*, the court in that case at least found itself able to say that the specific act of which appellant was accused—falsification of records—went to his "reliability, veracity, trustworthiness, ethical conduct and certainly affects the efficiency of the service." *Id.* at 843. *In this case, the court is* unable, or unwilling, to suggest the exact nature of the connection between Gueory's act and his fitness to work, although it does make general observations about the ways in which "a crime" might affect efficiency. 167 U.S.App.D.C. —— at ——, 510 F.2d 1222 at 1226.

29. *See, e. g.,* Bromberger, Rehabilitation and Occupational Licensing: A Conflict of Interests, 13 Wm. & Mary L. Rev. 794, 799 (1972) (footnotes omitted):

Two surveys of private employers, conducted 10 years apart [in 1966 and 1956], reveal that over 60 percent have considerable reservations about employing ex-offenders. These reservations vary from a total refusal to restricting the hiring of offenders for certain specific positions. Trade unions

Service Commission responded with a government-wide hiring policy which directed agencies "to take into consideration the social and humane need for the former offender's rehabilitation as well as the requirements of the position."[30] The Commission cannot—with any consistency at least—insist that this need be considered with respect to hiring decisions while allowing it to be ignored in decisions to dismiss. The statute does not make efficiency the *sole* criterion, and indeed the thrust of the Commission's directive is that humanitarian goals may justify some risks to the smooth functioning of governmental machinery.

The district court sent the case back to the Civil Service Commission solely for a determination of whether the Postal Service had met its "burden of establishing the connection between the criminal conduct and the plaintiff's suitability for employment." If this remand were expanded to encompass "further proceedings," as the Government contends it should have been under FCC v. Pottsville Broadcasting, Inc.,[31] the agencies might well be able to present evidence and reasons in support of Gueory's dismissal that would require us to affirm. But even granting the likelihood that the agencies could justify their actions in this case, I cannot ignore the broad implications of the court's decision for all government employees who at one time or another in their careers happen to run afoul of the law.

The court was not unaware of these implications:

> In concluding, however, that this logical nexus exists between the interpretive regulation and the statutory standard, we do so with caution. We readily recognize that the nexus may become attenuated if an agency attempts to invoke the regulation for activities of a minor nature, such as a traffic citation.[32]

This passage assumes, as does the entire opinion, that the nexus is solely a function of the crime involved. But the foregoing analysis indicates that the relationship is determined by a number of factors whose interrelationship can be quite complex. If no specification or analysis of these factors is to be required in these cases, the courts will simply not be in a position to review the critical question of whether the nexus is sufficient to support the regulation's application. My great concern remains that this case sets a dangerous precedent for the automatic imposition of a penalty in addition to that already provided for in the criminal code.

---

may deny membership, and in occupations where insurance bonding is customary, persons with criminal records are almost unemployable.

30. Civil Service Comm'n, Federal Personnel Manual, ch. 306, subch. 7 (Employment of Public Offenders). The Federal Personnel Manual is the official medium of the Commission for issuing its personnel regulations and instructions, policy statements, and related material on Government-wide personnel programs to other agencies.

31. 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940). *Pottsville* and Fly v. Heitmeyer, 309 U.S. 146, 60 S.Ct. 443, 84 L.Ed. 664 (1940), are cited for the proposition that if in the agency's judgment "new evidence was necessary to discharge its duty, the fact of a previously erroneous denial should not . . . bar it from access to the necessary evidence for correct judgment." *Id.* at 148, 60 S.Ct. at 444.

32. 167 U.S.App.D.C. at ——, 510 F.2d 1222 at 1226.