438 F.Supp. 1087 (1977)
Katherine JAMMER
v.
UNITED STATES of America, Veterans Administration, Civil Service Commission, Steve Savis, Director of VA Regional Office, Veterans Administration, and Joseph C. Mackney, Hospital Director of Jefferson Barracks, Veterans Administration.
No. 77-16 C (1).
United States District Court, E. D. Missouri, E. D.
September 19, 1977.
*1088 Stephen C. Banton, St. Louis, Mo., for plaintiff.
Jean C. Hamilton, Asst. U. S. Atty., St. Louis, Mo., for defendants.

MEMORANDUM
MEREDITH, Chief Judge.
This action is before the Court upon the motion of the defendant United States for summary judgment. Fed.R.Civ.Pro. 56. Plaintiff Katherine Jammer was removed from her position as a Licensed Practical Nurse with the Veterans Administration Hospital, Jefferson Barracks Division, St. Louis, Missouri for disciplinary reasons. She commenced this action for a writ of mandamus seeking declaratory relief, reinstatement, back pay, and interest. Subject matter jurisdiction to consider this action exists under 28 U.S.C. § 1361. Taylor v. United States Civil Service Commission, 374 F.2d 466 (9th Cir. 1967); Beale v. Blount, 461 F.2d 1133, 1137 (5th Cir. 1972).
The scope of judicial review in this type of action is limited to whether the applicable procedures have been followed, and to whether the agency removal decision is supported by substantial evidence and is not arbitrary and capricious. Alsbury v. United States Postal Service, 530 F.2d 852, 854 (9th Cir. 1976); Gueory v. Hampton, 167 U.S.App.D.C. 1, 5, 510 F.2d 1222, 1225 (1974). No de novo hearing is held. Rather, the case is submitted upon the agency record which the United States has filed in support of its motion for summary judgment. Polcover v. Secretary of Treasury, 155 U.S.App.D.C. 338, 341, 477 F.2d 1223, 1226 (1973), cert. denied, 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973).
By letter dated June 7, 1976 from Chief of Nursing Services, Veterans Administration Hospital, St. Louis, Missouri, plaintiff was informed that her removal from employment was proposed for the following reason:
"On April 22, 1976 you were present at a staff meeting held on 50S1. During this meeting you used insulting and obscene language about Mrs. Helen Stroback, R.N., and Mr. Sam Gettis, N.A. You stated, "A year ago I saw Mrs. Stroback doing oral sex on Sam. I believe they are still doing the same thing. Why else would there be two pillows and a blanket on the treatment table every morning. We certainly don't use them like that on the day shift." You also stated that one weekend at the change of tour at 7:30 a. m., Mrs. Stroback delayed giving the medication key to you because "she was sitting there with her feet up Sam's ass."
Plaintiff was advised that an incident occurring on March 11, 1975, when she used "insulting, abusive, and obscene language about other VA personnel" would be taken into consideration in determining the proper disciplinary action. Plaintiff was given an opportunity to reply to the charge. However, the hospital director removed her *1089 from her position of Licensed Practical Nurse effective July 14, 1976.
Plaintiff appealed her removal to the United States Civil Service Commission Federal Employee Appeals Authority and a hearing was held. On October 26, 1976 the decision to remove her was affirmed.
Plaintiff does not claim any procedural irregularity in the agency decision. She alleges that on its merits the removal decision was arbitrary, capricious, unreasonable, and without a factual basis.
During the Appeals Authority hearing the Veterans Administration Hospital offered the testimony of Nelda Franco, Lynn Burch, Ann Newman, Luther Perry, James Windett, Sam Gettis, and Helen Stroback. Plaintiff offered the testimony of herself, Edward Bright, and Zenobia Merry. The report of a polygraph examination taken by her was also received in evidence. At the hearing plaintiff was represented by counsel.
Mrs. Nelda Franco testified to the following:
1. She is the Head Nurse on Ward 50, South 1, at the Jefferson Barracks hospital. On April 22, 1976 she conducted a personnel staff meeting to discuss patients, personnel problems, and allegations of racial discrimination. During the meeting plaintiff Jammer brought up affairs that were alleged to have taken place on the ward. Plaintiff had brought this topic up many times in the past.
2. During the meeting, plaintiff stated that there was an affair going on between Mrs. Stroback and Mr. Gettis in the treatment room on Ward 50, South 1. Mrs. Franco asked plaintiff to tell this to the associate chief nurse and to her (Mrs. Franco's) supervisor. Plaintiff further stated that there were blankets on the table in the treatment room and that that area was still being used for sexual pleasures between Mrs. Stroback and Mr. Gettis. Plaintiff recounted an incident where she told Mrs. Franco that Mrs. Stroback did not turn a key over to her because Mrs. Stroback "was sitting there with her foot up Sam's ass."
3. The context of plaintiff's statement was her allegation that she had been discriminated against because of her race.
4. Mrs. Franco attempted to change the topic of discussion because this alleged affair had been a recurring topic for 18 months and it was affecting patient care on the ward.
5. Mrs. Franco had no reason to believe plaintiff's allegation as to the affair to be true.
6. Mrs. Franco considered plaintiff's statements obscene and insulting.
7. Mrs. Franco has been head nurse on Ward 50, South 1, for 2½ years; plaintiff had been on that ward for several years prior to Mrs. Franco.
8. Other than a reprimand, plaintiff has no record of disciplinary action.
Mrs. Lynn Burch testified to the following:
1. She attended the staff meeting on April 22, 1976. The purpose of the meeting was the discussion of the relationships of personnel and patients. The meeting had been called at the suggestion of Mr. Windett, a nursing assistant, who felt there were problems of racial discrimination on the ward.
2. During the meeting plaintiff stated that she saw Helen Stroback do oral sex on Sam Gettis, that she believed such activity was still going on because there were pillows and a blanket on the treatment table. Plaintiff also stated that she saw Mrs. Stroback with her foot up Mr. Gettis' ass.
3. Mrs. Burch had no reason to believe plaintiff's statement was true.
4. Mrs. Franco told plaintiff that this meeting was not the right place for her statements, and to speak with Mrs. Milner about it.
Luther Perry testified that he is a nursing assistant on Ward 50, South 1. He attended the April 22, 1976 meeting but did not recall plaintiff commenting on an alleged affair between Mrs. Stroback and Mr. Gettis. Nothing was said about racial discrimination.
*1090 James Windett testified to the following:
1. He is a nursing assistant on Ward 50, South 1. He was present at the April 22, 1976 meeting. It was called at his suggestion to discuss personnel matters. He did not recall hearing Mrs. Jammer make a statement regarding an affair between Mr. Gettis and Mrs. Stroback.
2. He recalled discussing the treatment of a suicidal black patient by one of the doctors, and the different way plaintiff was being treated in comparison with Doris Bryant, a white employee.
3. The meeting was held in a small room. Everyone was seated at a table and a desk. At one point during the meeting several people were speaking at once. He did not hear all the conversations.
Plaintiff Katherine Jammer testified as follows:
1. Plaintiff is a licensed practical nurse. She had worked for the federal government for eleven years prior to her removal. Up to that time she had never been disciplined in her employment. She attended the personnel meeting in Mrs. Franco's office. The dimensions of the office were 6 feet by 10 feet.
2. The first topic discussed was the treatment of patient McMorris. Mr. Windett was concerned that McMorris, a suicidal patient, was being pushed out of the hospital before he was ready. Mrs. Franco said she was covering for the case doctor who had but one year left before retirement.
3. Next, Mr. Windett asked Mrs. Franco why plaintiff was not being given privileges granted other employees regarding sick leave. Mrs. Franco said nothing, but plaintiff stated that the reason for this was she had witnessed two employees in a compromising situation a year ago and had been reprimanded undeservingly. Mrs. Franco asked why plaintiff did not go and tell this to Mrs. Milner. Plaintiff answered that she had tried to tell Mrs. Milner and Mrs. Newman who refused to listen.
4. Next plaintiff asked, without naming anyone, whether the employees were to continue to face pillows and blankets in the treatment room. Mrs. Franco did not want to discuss the matter. At this time the meeting was adjourned.
5. Plaintiff did not mention Stroback's or Gettis' names during the meeting, but they were the ones about whom she was speaking.
6. Plaintiff used no profanity during the meeting.
7. On one Saturday morning before the personnel meeting plaintiff, after reporting for work, sought to get the keys from Mrs. Stroback, the night nurse. Plaintiff was kept waiting for 30 minutes. She called Mrs. Franco and said that she had been on duty for 30 minutes waiting for Mrs. Stroback to give her the keys, but that Mrs. Stroback was in the nursing office playing with Mr. Gettis. This comment was brought up and reiterated by Mrs. Franco as a topic at the April 22 personnel meeting.
8. On July 29, 1976 plaintiff took a polygraph test concerning the hospital incident.
9. Plaintiff used no obscene or insulting language during the April 22, 1976 meeting.
10. Once, on March 9, 1976 plaintiff observed Stroback and Gettis having oral sexual relations in the doctor's office adjoining the nurse's station.
11. Plaintiff felt that, after she had brought to Mrs. Franco's attention a situation she felt was harmful to a patient and Mrs. Franco took no action, she did not know who else would listen to her.
12. Plaintiff did not immediately report what she observed between Stroback and Gettis because they would be able to deny it. It would then appear that plaintiff was trying to start trouble. Plaintiff prefers to stay out of trouble.
13. Plaintiff observed the sexual relationship between Stroback and Gettis one time, in the doctor's office adjoining the nurse's station.
Sam Gettis testified that he is a nursing assistant on Ward 50, South 1, working the midnight to eight duty tour. Mrs. Helen Stroback is the charge nurse during this *1091 tour. He and she are very good friends. They have never been involved romantically or had an intimate relationship.
Helen Stroback testified that she is a registered nurse on Ward 50, South 1. She has worked as a nurse for two years. She and Mr. Gettis are very close friends. She has never had an intimate or sexual relationship with Gettis.
Mrs. Ann Newman testified to the following facts:
1. She is a psychiatric nursing supervisor at the hospital. She investigated the allegations made at the April 22, 1976 meeting. In her investigation she spoke with Mrs. Zenobia Merry, a ward nurse, on April 28, 1976.
2. Mrs. Newman asked Mrs. Merry to put into writing her recollection of the April 22 meeting. Mrs. Merry was hesitant and wanted to speak with her husband and the people who had been present at the meeting.
3. Mrs. Merry asked if there was another way to handle the matter. She said that, if Mrs. Jammer were transferred, she would probably continue to talk about the same things to anybody that would listen. Mrs. Merry stated that Mrs. Jammer had really put her foot into it this time.
4. On April 29 Mrs. Merry indicated she would give no written report.
Edward Bright testified that he is a St. Louis County Police Officer and is on retainer with Central Consultant as a polygraphist. He is a member of the American Polygraph Association and has given over 3,000 polygraph examinations. On July 29, 1976, he administered a polygraph examination to plaintiff. He filed a written report of the examination. During the examination she denied the allegations against her. Officer Bright concluded that plaintiff told the truth during the examination.
Zenobia Merry testified that she is a licensed practical nurse. She attended the April 22 staff meeting. The meeting was called because the ward personnel were not working together properly. She believed a certain patient was not being treated properly because he was black. She did not recall hearing any conversation from plaintiff on any topic.
On April 10, 1975 plaintiff was reprimanded by the hospital for using "insulting, abusive, and obscene language" and for making "unfounded, slanderous and defamatory statements" to Mrs. Stroback and Mr. Gettis. The reprimand was upheld after a grievance proceeding.
In its written opinion the Appeals Authority credited the testimony of Mrs. Franco and Mrs. Burch as to the charges against plaintiff. Plaintiff's testimony itself was seen as corroborating portions of the Franco and Burch testimony. Plaintiff was noted as having admitted making the accusation about the affair but denied vulgarity or the use of the participants' names.
It was further noted that the size of the room in which the April 22 meeting took place belied the inability of witnesses Perry, Merry, and Windett to recall what was said. Their testimony was given little weight.
The Authority ruled that the polygraph examination report did not carry sufficient weight to support plaintiff's doubtful credibility against the testimony of Franco and Burch.
The Appeal Authority looked upon the issue as being whether the hospital director was reasonable in his decision to remove plaintiff upon the evidence then at hand. The Authority decided in the affirmative and upheld the removal, ruling that the decision "was not unreasonable, arbitrary, or capricious but was for such cause as will promote the efficiency of the service. .."
The Veterans Administration was authorized to remove plaintiff "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7501(a). Veterans Administration regulations define as improper work behavior the "use of insulting, abusive, or obscene language to or about other personnel, patients, or beneficiaries." 38 C.F.R. § 0.735-20(b). As the United States points out, courts generally defer to the agency's determination of what constitutes *1092 a cause that will promote the efficiency of the service. Gueory v. Hampton, 167 U.S. App.D.C. 1, 4, 510 F.2d 1222, 1225 (1974); Donovan v. United States, 139 U.S.App.D.C. 364, 366, 433 F.2d 522, 524 (1970); Meehan v. Macy, 129 U.S.App.D.C. 217, 225, 392 F.2d 822, 830 (1968). Federal agencies are invested with considerable discretion in the making of employment decisions. Taylor v. United States Civil Service Commission, 374 F.2d 466, 469 (9th Cir. 1967).
A review of the record clearly indicates that there is substantial evidence to support the charge set out in the June 7, 1976 letter. The testimony of Mrs. Franco and Mrs. Burch indicated that plaintiff made the alleged statements during the April 22 meeting. The language used was both insulting and obscene. The purpose of the meeting was the discussion of personnel problems and their solution  not the making of scurrilous allegations against other employees. The evidence indicated that the continued making of allegations about a Stroback-Gettis affair adversely affected patient care, the mission of the hospital. Plaintiff's statements at the meeting continued the matter as a disruptive topic of conversation among both patients and personnel. Aside from plaintiff's testimony there was no evidence to support the truth of her allegations about the affair.
It is the opinion of the Court that the decision to remove plaintiff from her position was based upon substantial evidence, and was not arbitrary, capricious, or unreasonable. Therefore, the motion of the United States will be sustained and the action dismissed with prejudice.