·Lee D. GLENN, Plaintiff,

v.

UNITED STATES DEPARTMENT OF LABOR, OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, and Merit Systems Protection Board, Defendants.

No. LR–C–80–129.

United States District Court,
E. D. Arkansas, W. D.

June 19, 1981.

---

John L. Burnett, Little Rock, Ark., for plaintiff.

Walter G. Riddick, Asst. U. S. Atty., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HOWARD, District Judge:

This proceeding is before the Court upon plaintiff's motion for summary judgment involving the decision of the Merit Systems Protection Board affirming the action of the Occupational Safety and Health Admin-

istration (OSHA) in removing plaintiff, Lee D. Glenn, as a safety specialist "in order to promote the efficiency of the service" of OSHA.[1] The United States Department of Labor, Occupational Safety and Health Administration and Merit Systems Protection Board have moved likewise for a summary judgment in their favor.

■ Before discussing the issues tendered, the Court deems it important to delineate the scope of this Court's responsibility in reviewing the action of OSHA in terminating the services of the plaintiff. It is settled law that the scope of judicial review in this type of proceeding is limited to whether applicable procedures have been followed and whether the agency's removal decision is supported by substantial evidence and is not arbitrary and capricious. Accordingly, it is clear that a *de novo* hearing is not required. *Jammer v. United States*, 438 F.Supp. 1087 (E.D. Mo.1977), *aff'd mem.*, 571 F.2d 439 (8th Cir. 1978).

On March 30, 1978, the following communication, in pertinent part, was mailed to the plaintiff:

The purpose of this letter is to notify you that in order to promote the efficiency of the service, it is proposed to remove you from your position of *Safety Specialist, GS–018–11*, not earlier than thirty calendar days from the date of your receipt of this letter. The charges and specifications on which this proposed action is based follow:

. . . .

Charge 2: *Attempting to pour a mixture of sugar, vinegar, corn syrup, salt, various spices and gas in the gas tank of Regional Administrator Robert C. Tice's automobile.*

Specification: In your affidavit, Exhibit B, you stated that on February 24, 1976, you, James Breeden and a female companion drove to the Downtowner Motel in Hot Springs, Arkansas where you knew Mr. Tice would be staying.

---

1. A nonprobationary and preference eligible federal employee may be terminated only for such cause as will "promote the efficiency of the service." 5 U.S.C. § 7513. *See Also:* 5 C.F.R. §§ 752.201–402.

You stated you located a white Chevrolet with Tennessee tags which you believed was Regional Administrator Tice's car. You then pulled your car 'head on to the back of the white Chevrolet.' Leaving Mr. Breeden and his companion in the car, you got out of your car and attempted to pour the mixture of sugar, vinegar, corn syrup, salt, spices and gas into the gas tank of the white Chevrolet.

The above listed reasons and specifications raise the question of your fitness to carry out your responsibilities without impairing the efficiency of the Occupational Safety and Health Administration.[2]

On July 13, 1978, OSHA's hearing officer rendered his decision which found that OSHA's proposed action to remove plaintiff in order to promote the efficiency of the service was warranted. On July 25, 1978, the plaintiff appealed from the adverse decision of the agency to the United States Civil Service Commission.[3]

On May 18, 1979, the Merit Systems Protection Board affirmed the action of the agency in discharging appellant.

The thrust of plaintiff's argument for summary judgment may be summarized as follows:

The decision to remove plaintiff from OSHA in order to promote the efficiency of the service is arbitrary, capricious, and an abuse of discretion.

Plaintiff does not allege any procedural irregularity as a ground for relief, and accordingly, this opinion deals exclusively with the substantive issue tendered.

The plaintiff testified as follows:

On December 24, 1977, while enroute to his residence, after leaving work at approximately 4:30 p. m., plaintiff stopped at a package liquor store and purchased a six-pack of beer and a sack of potato chips.

Immediately upon arriving at his residence, he commenced drinking beer and consumed "three or four beers" on an empty stomach; that he later called James Breeden, a fellow employee and roommate, who was visiting, at the time, in the home of a friend, and asked Jim Breeden "if he wanted to get back at Tice," Regional Director for OSHA, by placing "some sugar in his gas tank?" Breeden's response was in the affirmative.

Subsequently to the telephone conversation, plaintiff picked up a small gasoline can, got in his automobile and drove to the house where Breeden was visiting. Upon arriving, Breeden took the gasoline can and poured approximately five pounds of sugar in the can and also added corn syrup, wesson oil, salt, pepper and vinegar to the mixture. Plaintiff, Jim Breeden and Breeden's girlfriend immediately left for Hot Springs, Arkansas, for a motel where Tice was purportedly staying while attending an OSHA sponsored meeting. While enroute to Hot Springs, plaintiff stopped at a service station and added a quantity of gasoline to the can. Upon arriving at the motel, plaintiff thought he recognized Tice's personal automobile and after removing the gas cap from the gasoline tank of the vehicle, plaintiff made an effort to pour the mixture in the gasoline tank, but was unable to do so because the mixture clogged the nozzle of the container preventing the mixture from flowing from the can. It is conceded that the vehicle that plaintiff identified as Tice's vehicle was not in fact the personal vehicle of Tice. Moreover, it is conceded that Tice was unaware of the incident and did not receive information about the venture until several months after the incident occurred.

Plaintiff's affidavit which was introduced as an exhibit in support of his case before the administrative hearing recounts the incident as follows:

---

2. Plaintiff was also charged with the submission of a false travel voucher on August 30, 1976, but this charge was withdrawn by the agency because the hearing officer found that reasonable doubt existed as to whether plaintiff knowingly filed a false voucher. Consequently, this issue is not before the Court.

3. The Civil Service Commission was abolished subsequent to the filing of plaintiff's appeal and, consequently, the matter was adjudicated by the Merit Systems Protection Board, the successor of the Civil Service Commission.

On Thursday, February 24, 1977, I knew that Bob Tice was in Hot Springs, Arkansas for the Annual Garland County Community College meeting which is an excuse to go to the horse races. On the evening of the 24th I called Jim Breeden and told him about Tice being there. Just knowing Tice I knew he would be driving. I asked Breeden if he wanted to go down there and put some sugar in Tice's gas tank. He said he did. I went over to Ginger's house (apartment) that's Breeden's girlfriend. I took Breeden's gas can. When I got there Breeden was so excited about getting back at Tice that he the five [sic] pounds of sugar he put in the can, he put vinegar, corn syrup, salt and a lot of different type spices from the kitchen. Ginger went with us. We then drove to Hot Springs in my car. I already knew that they were staying at the Down Towner. I was in hopes that Tice's car would be in the remote lot so I drove to it first. So I drove to the lot behind the motel. I saw a white Chevy with Tennessee tags and I felt sure that was Tice's car. I pulled head on to the back of the white Chevy. Breeden said he would watch for me, I knew he would not have anything to do with pouring it in because he also is a big mouth when it comes to talk. So I got out of the car and got a can of crap. I tried to pour it into the car's gas tank but it was so thick that it stopped up the gas can nozzle. I poured more on me and the bumper than in the gas tank. I saw someone coming and got back into the car and went over to the remote parking lot.

The affidavit of James R. Breeden relates the incident as follows:

During the early part of February 1977 Lee Glenn, friend of ours, and myself went to Hot Springs, AR to place sugar in the gas tank of TICE's car. I made a mixture of gasoline and sugar which we took with us to Hot Springs. We drove to where TICE's car was parked and LEE took the can containing the mixture to TICE's car while our friend and myself stayed in GLENN's car. We acted as lookouts. We saw GLENN remove the gas cap and tried to pour the mixture into the tank. We then left. We knew where to locate TICE's car because LEE said he had been told by BROWN where to find the car and what times TICE and himself (BROWN) were going to dinner. Before going to Hot Springs LEE GLENN called me in Little Rock and discussed the plan to put sugar in TICE's tank. At that time GLENN had told me he had discussed this plan with BROWN.

The Merit Systems Protection Board in affirming the removal of the plaintiff found that OSHA's action "is not arbitrary, capricious or unreasonable and we find that the agency had a reasonable basis for the action" and that the "agency's removal penalty was within its discretion and while perhaps harsh, was not unduly severe under the particular circumstances of the case."

 The Court is persuaded that there is substantial evidence in the record to sustain the decision of the agency and the affirmance by the Merit Systems Protection Board. It is not the responsibility of this Court to resolve conflicts in the testimony, determine the credibility of the witnesses or the weight to be afforded the evidence offered in the course of the administrative hearing. It is well settled that federal agencies are endowed with considerable discretion in making employment decisions and courts will usually defer to an agency's determination of what constitutes a cause that will promote "the efficiency of the service." *Jammer v. United States*, supra; *Taylor v. United States Civil Service Commission*, 374 F.2d 466 (9th Cir. 1967).

It is clear from the record that plaintiff involved other employees of OSHA in the act resulting in the charge lodged against him; that stories relating to the incident circulated throughout the region which ultimately led to the investigation and the subsequent charge against the plaintiff; that the attempted act, under Arkansas law, is

unlawful[4] and that this act, indeed, justified OSHA in questioning plaintiff's fitness to promulgate and enforce the regulations of the agency inasmuch as the character of plaintiff's responsibilities as a compliance officer placed him in a controversial position with others. Moreover, plaintiff's insensitivity to the potential harm flowing from the use of the vehicle, had plaintiff been successful in adding the mixture to the gasoline tank, indeed, raise serious questions regarding plaintiff's concern for the safety of others and his ability to appreciate the congressional purpose of OSHA.[5]

Finally, plaintiff argues that even "if the agency's decision to discipline him was not arbitrary and capricious, the degree of punishment itself . . . is grossly disproportionate to the conduct involved. The 'punishment' does not fit the 'crime.'"

██ It is generally recognized that a penalty for employee misconduct is a matter left to the discretion of the agency. *Heffron v. United States*, 405 F.2d 1307 (1969); *Dulcy v. United States*, 284 F.2d 687 (1960). However, where the sanction exceeds the range of permissible punishment specified by statute or regulation or is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion by the agency, courts will intercede and grant relief. But in the instant case, the Court is persuaded that the plaintiff has not shown that the sanction imposed is so harsh that there is an "inherent disproportion between the offense and punishment." *See: Power v. United States*, 531 F.2d 505 (1976); *Grover v. United States*, 200 Ct.Cl. 337, 353 (1973).

The penalty imposed is within the permissible range specified by the regulation; and while this Court would have probably imposed a sanction short of removal, if it were in the shoes of the agency, this does not serve as a legitimate basis for this Court to substitute its judgment for that of the agency. The test is whether the agency has abused its discretion in electing to remove the plaintiff. While there was a delay of approximately eighteen months between the date of the incident, namely, February 24, 1977, and his dismissal on July 21, 1978, the Court believes that because of the gravity of the charge and the consequences that could result from it, it was not unreasonable for the agency to await a complete investigation before initiating proceedings against the plaintiff. Moreover, plaintiff has not offered any evidence to illustrate how he has been harmed or prejudiced by the delay.

Accordingly, it is the opinion of the Court that the decision to remove the plaintiff

---

4. Ark.Stat.Ann. § 41–701 (Repl.1977), provides:

 Criminal attempt.—(1) A person attempts to commit an offense if he:

 . . . .

 (b) purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as he believes them to be. Section 41–703 provides:

 Criminal attempt—Grading.—A criminal attempt is a:

 . . . .

 (4) class D felony if the offense attempted is a class C felony;
 Section 41–1906 provides:

 Criminal mischief in the first degree.—(1) A person commits the offense of criminal mischief in the first degree if he purposely destroys or causes damage to:

 (a) any property of another; or

 . . . .

 (2) Criminal mischief is a class C felony if the amount of actual damage is $500 or more. Otherwise, it is a class A misdemeanor.

5. In articulating the purpose and policy of the legislation creating OSHA, the Congress of the United States made the following finding and declaration:

 (a) The Congress finds that personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments.

 (b) The Congress declares it to be its purpose and policy, through the exercise of its powers to regulate commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources—*See:* 29 U.S.C. § 651.

from his position was based upon substantial evidence and was not arbitrary, capricious or unreasonable. Therefore, the motion of the defendants will be sustained and the action dismissed with prejudice.