575 F.2d 792
 Royce G. HURLEY, Plaintiff-Appellant,
v.
UNITED STATES of America, Dr. John L. McLucas,
Administrator, Federal Aviation Administration of the United
States Department of Transportation, and Robert Hampton,
Jayne B. Spain, and L. J. Andolsek, as members of the United
States Civil Service Commission, Defendants-Appellees.
 No. 76-1818.
 United States Court of Appeals,
Tenth Circuit.
 Argued Dec. 13, 1977.
Decided April 17, 1978.
 
 Claude V. Sumner, Midwest City, Okl. (Ferrill H. Rogers, Oklahoma City, Okl., on brief), for plaintiff-appellant.
 William S. Price, Asst. U. S. Atty., Oklahoma City, Okl. (David L. Russell, U. S. Atty., Oklahoma City, Okl., on brief), for defendants-appellees.
 Before SETH, Chief Judge, DOYLE and McKAY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 This dispute arises in the labyrinth of Federal Civil Service regulations. We are called upon to review the district court which reviewed and affirmed the Civil Service Commission Board of Appeals and Review (Board) which reviewed and reversed the Civil Service Commission (CSC) hearing examiner.
 
 SCOPE OF OUR REVIEW
 
 2
 It is not our prerogative to substitute our judgment for that of the Board. The decision of the Board is to be given nearly every presumption of validity that the law presently grants to any administrative adjudication. Since this appeal involves no issues of fact, we concentrate solely on issues of law and the application of legal concepts to facts. The Board's interpretation of its own rules and regulations must be sustained and applied as controlling law unless that interpretation is plainly erroneous or inconsistent with the regulations. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). Accord INS v. Stanisic, 395 U.S. 62, 72, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969); Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Gueory v. Hampton, 167 U.S.App.D.C. 1, 4, 510 F.2d 1222, 1225 (1974); Board of Directors & Officers v. National Credit Union Admin., 477 F.2d 777, 784 (10th Cir.), cert. denied, 414 U.S. 924, 94 S.Ct. 233, 38 L.Ed.2d 158 (1973). In our review of the Board's application of legal concepts to the undisputed facts, however, it is the duty of this court to set aside a decision of the Board if it is "arbitrary, capricious . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1976). See Leefer v. Administrator, NASA, 177 U.S.App.D.C. 62, 66, 543 F.2d 209, 213 & n.34 (1976); Sexton v. Kennedy, 523 F.2d 1311, 1314 (6th Cir. 1975), cert. denied, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976); Gueory v. Hampton, supra ; Pauley v. United States, 419 F.2d 1061, 1065 (7th Cir. 1969); Vigil v. Post Office Dept. of the United States, 406 F.2d 921, 924 (10th Cir. 1969); Davis v. Berzak, 405 F.2d 642, 644 (10th Cir. 1969). The scope of our review is therefore quite narrow, limited to ensuring that the required procedures have been followed and that the Board's action is not arbitrary or capricious. The arbitrary and capricious standard of review does not require that the agency's decision be supported by substantial evidence, but only that it have a rational basis in the law. Wroblaski v. Hampton, 528 F.2d 852, 853 (7th Cir. 1976); Wood v. United States Post Office Dept., 472 F.2d 96, 99 n.3 (7th Cir.), cert. denied, 412 U.S. 939, 93 S.Ct. 2775, 37 L.Ed.2d 399 (1973). Applying this standard we conclude that the decision of the Board must be reversed.
 
 BACKGROUND
 
 3
 Appellant is a preference eligible career civil service employee. As such he is entitled to substantial procedural safeguards in the event he is the subject of a reduction in force (RIF) action as described by 5 C.F.R. §§ 351 et seq. (1977), or an adverse action as explained in 5 U.S.C. §§ 7511-7512 (1976). Under the RIF procedures outlined in 5 C.F.R. §§ 351 et seq. a preference eligible employee is entitled to preferential treatment in his retention and competition for alternative positions of civil service employment within his home geographic area if he is released from his competitive level by reassignment, reorganization, or reclassification of position due to change in duties. Section 7511(2) defines adverse actions as "a removal, suspension for more than 30 days, furlough without pay, or reduction in rank or pay." Section 7512 provides that an agency may take adverse action against a preference eligible employee "only for such cause as will promote the efficiency of the service," and requires that the employee against whom adverse action is proposed receive advance written notice explaining the nature and reason for the proposed action, an opportunity for full hearing on the matter, and notice of any adverse decision.
 
 
 4
 Prior to the agency action here under review appellant was a GS-13 program control officer in the Federal Aviation Administration (FAA), Southwest Region, stationed at Ft. Worth, Texas. His duties in this position were originally described as providing managerial and administrative staff support to a superior officer in the flight inspection program. These responsibilities gradually eroded, however, and from 1971 to 1973 appellant's principal duties were connected with an aircraft rental program. Although the duties he actually performed had changed considerably over the years, the agency had made no attempt to reclassify his position as required by CSC regulations.
 
 
 5
 The Federal Personnel Manual (FPM) 351, Subch. 2-6(a)(2) (1973) provides that an
 
 
 6
 agency must follow the reduction-in-force procedures in either of the following situations:
 
 
 7
 (a) When management deliberately changes duties assigned an employee and
 
 
 8
 (b) When a gradual change results in classification of duties at a lower grade. (emphasis added)
 
 
 9
 Thus, when appellant's original duties in the flight inspection program eroded, and if his duties in the aircraft rental program no longer could support his GS-13 position as program control officer, it was the imperative duty of the agency to initiate a RIF action in the Southwest Region, giving appellant the preferential treatment for alternative FAA employment to which he was entitled in the area of his Ft. Worth home.
 
 
 10
 As discussed below, it was the failure of the agency to follow this mandatory procedure that precipitated subsequent errors leading to the controversy now before us on appeal. We regret that the failure of the agency to undertake the prescribed RIF action in the Southwest Region was neither discovered nor rectified by appropriate corrective Board action as required by FPM 351, Subch. 1-11 (1973).
 
 FACTS
 
 11
 The agency was apparently beginning to discharge its duty to conduct a RIF action when it fired its opening salvo in the form of letters dated June 6 and 29, 1973. In those letters the agency notified appellant that his position as a program control officer would be abolished within 120 days pursuant to a major FAA reorganization. (A.R. 16, 616.)[1] Appellant immediately inquired whether he would receive the benefits of an appropriate RIF proceeding in the Southwest Region (A.R. 15), and was informed that RIF regulations did not apply to the type of reorganization contemplated. (A.R. 16.) On July 8, 1973, the position of program control officer with its eroded, nearly non-existent duties was transferred from the Southwest Region to the Oklahoma Region. In a mass personnel change, appellant was identified with the transferred program control officer functions and was likewise transferred from Ft. Worth to Oklahoma City. The aircraft rental program functions were specifically exempted from the list of functions being transferred and remained instead in the Southwest Region as part of another FAA position. (A.R. 621.)
 
 
 12
 Twenty-three days later, and in accordance with the June 6, 1973 letter, the agency abolished appellant's position as program control officer in a RIF proceeding conducted in the Oklahoma Region. Presented with the choice of leaving the civil service altogether or accepting a GS-12 position available in the Oklahoma Region, appellant accepted the lower grade position and immediately appealed to the Civil Service Commission, seeking review of the agency proceedings by which he was first transferred to the Oklahoma Region and subsequently reduced to a lower grade position. Because the RIF action was taken after his transfer to the Oklahoma Region, appellant complained that he was deprived of the preference consideration he would have received in his home area, the Southwest Region, had the RIF been conducted prior to his transfer.
 
 PRIOR PROCEEDINGS
 
 13
 On review, the CSC hearing examiner concluded that appellant's transfer to the Oklahoma Region was fatally defective and that the Oklahoma Region therefore lacked jurisdiction over appellant when it processed the subsequent RIF action. (A.R. 136.) The CSC Board of Appeals and Review reversed, finding that appellant's transfer was valid under applicable CSC rules and regulations. (A.R. 156-57.) On remand to the hearing examiner and on subsequent appeal to the Board, the RIF action undertaken in the Oklahoma Region was also upheld as valid. (A.R. 3, 46.)
 
 
 14
 Appellant's unsuccessful appeal to the district court focused solely on the transfer issue and whether appellant suffered an adverse action by reason of the transfer. He did not and does not now complain that if he was properly included in the transfer to the Oklahoma Region the RIF action ultimately taken was improper. His timely complaint to the agency, hearing examiner, Board and district court is that the RIF action should have taken place in his home region and that he should not have been included in the transfer to the Oklahoma Region. We agree.
 
 VALIDITY OF THE TRANSFER
 
 15
 Our primary consideration is whether the Board's determination that appellant was properly transferred is sustained by a rational basis in the law. The validity of appellant's transfer turns on two independent, but related, factors: (1) whether the functions originally described as the duties of a program control officer were properly transferred to the Oklahoma Region, and (2) whether appellant was properly identified with transferred functions (rather than with the aircraft rental function on which he spent most of his time and which remained in the Southwest Region).
 
 Transfer of Function
 
 16
 In determining whether the Board correctly held that the original program control officer functions were properly transferred, we must look to FPM 351, Subch. 3-1 (1972) which defines a function and regulates its transfer. This regulation states:A function is all or a clearly identifiable segment of an agency's mission (including all the integral parts of that mission), regardless of how it is performed. For this purpose, an agency is any organizational entity; it may be an entire department, an independent establishment, a bureau, branch, division, section or smaller unit. . . . The reference to "all the integral parts of that mission" emphasizes that any agency activity that can be identified as a recognizable segment of its responsibility may be a function. . . . A transfer of function is the transfer of the performance of a continuing function from one competitive area and its addition to one or more other competitive areas . . . A function being transferred purely for liquidation is not a continuing function. A function is transferred when it disappears or is discontinued at one location and appears in identifiable form at another location . . . (emphasis added)
 
 
 17
 This regulation is quite unambiguous in indicating that a proper transfer of function must involve the transfer "of the performance of a continuing function," not merely the transfer of a paper job description. The regulation further emphasizes that even if a function is actually performed, if it is transferred "purely for liquidation" it is not a "continuing function" and is therefore not legally subject to transfer.
 
 
 18
 The record in this case concerning the program control officer functions is uncontradicted. Appellant's duties as delineated in his paper job description had substantially eroded by the time of the transfer. The paper position description, used as the basis of the transfer, had been in existence since 1965, did not reflect organizational changes effected in 1969 and 1972, and was not revised to reflect the admitted substantial erosion of appellant's duties through the years, and was not reviewed at the time of the transfer to determine its accuracy. The number and extent of programs under the direction of a superior officer, to whom appellant was to render specialized managerial and administrative support, was extremely limited. (A.R. 157.)
 
 
 19
 The position purportedly transferred to the Oklahoma Region had essentially no duties or responsibilities to be performed prior to or after the transfer. Even assuming there actually were some functions, they were transferred purely for liquidation. Appellant was informed by the letters of June 6 and 29, 1973, that his position as program control officer would be abolished within the next 120 days. (A.R. 16, 616.) On June 26, 1973, the agency issued a message advertising appellant as surplus due to the FAA reorganization. (A.R. 59.) In response to his inquiry, appellant was informed that through the reorganization "all positions in the old flight inspection functions . . . are abolished and new positions are established." (A.R. 16.) The unchallenged findings of the CSC hearing examiner included the following: (1) the position description of appellant existing prior to the transfer could not and would no longer accurately reflect the duties performed by him (A.R. 134); (2) the agency was aware that appellant's job would not exist in fact in the Oklahoma Region upon the occurrence of the transfer, and that appellant "would be assigned to the Oklahoma City office with nothing for appellant to do" (A.R. 135); (3) that "appellant's job duties were not being transferred to Oklahoma City" (A.R. 135); and (4) that "the Southwest Region was well aware that appellant's job duties would not appear in identifiable form in Oklahoma City." (A.R. 135.) Answering interrogatories submitted in the district court discovery process, the agency admitted that appellant's 23-day position in the Oklahoma Region was "an interim assignment until such time as a Reduction in Force (RIF) notice could be given (appellant) since, as the June 6, 1973 letter states, the functions of the (former) Aircraft Management Branch (which included appellant's position) were absorbed into (another) organization, and no such position as he held was actually available in (the Southwest Region)." (T.R. 95.)We conclude from our examination of the above facts that there is no rational basis in the law for the Board's determination (1) that the transfer involved a "continuing function", and (2) that "no inference may be drawn that (appellant's) position was transferred solely for liquidation." The fact that the transfer occurred on July 8, 1973, while the RIF action liquidating his position occurred on July 31, 1973, does not prove otherwise. In light of all the evidence presented to the Board, the July 31, 1973 letter made reference to the pre-transfer letters notifying appellant of the ultimate RIF action. Since no function was properly transferred to which appellant could have been identified, his transfer is fatally defective.
 
 Identification with Transferred Function
 
 20
 Even assuming that the program control officer functions were properly transferred to the Oklahoma Region, we cannot agree with the Board's further conclusion that appellant is to be identified with these functions rather than the aircraft rental program functions. In examining this issue, it is important to bear in mind the agency's own regulations. The FPM 351, Subch. 3-4 (1968), instructs as follows:
 
 
 21
 It is important to determine which employees are identified with a transferring function because identification determines their rights and obligations. Appendix C of this chapter contains guides to assist agencies in identifying employees with a transferring function.
 
 
 22
 Because employee rights and obligations in a transfer of function are determined by the identification of employees with the transferring function, agencies must be very careful in the identification. . . .
 
 
 23
 Method 1 is the main way to identify employees with a transferring function and it must be used if practicable in all transfers. . . . Under method 1 an employee is identified with a function on which he spends all or a major part of his time except that, regardless of the expenditure of the major part of his time, the employee is identified with a function on which he spends his grade-controlling duties.
 
 
 24
 The precatory language of the regulation indicates its policy structure. The duty of the administrative agency is to be particularly sensitive in identifying employees with transferring functions so as to insure that their rights and obligations are protected. In this case, as a factual matter, all of the evidence, including the agency's evidence, indicates that appellant should properly have been identified with the aircraft rental functions, not the program control functions. There is no dispute that more than 50 per cent of appellant's job function was responsibility for the aircraft rental program. (A.R. 134.) Appellant's immediate superior officer in the Southwest Region verified that appellant's "primary, basic, and highest level duties and responsibilities from 1971 until July 8, 1973, consisted of handling the aircraft rental program." (A.R. 55.) The hearing examiner quite properly concluded that
 
 
 25
 the grade controlling job duties performed by appellant were concerned with the aircraft rental program which was not transferred; and . . . that for the agency not to have so identified appellant was in error.
 
 
 26
 Once having identified appellant to remain in the Southwest Region, if the duties being performed by appellant were not supportive of a position at appellant's grade level, institution of reduction in force procedures at the Southwest Region would have been proper.
 
 
 27
 (A.R. 136.) The Board agreed that "(appellant's) duties had substantially eroded by the time of the transfer of function." (A.R. 156.) The Board concluded, however,
 
 
 28
 that this remaining responsibility (for the aircraft rental program) clearly could not have supported a GS-13 grade, and therefore, it cannot be considered the grade-controlling duty for purposes of identifying (appellant) with the transfer of function under this method. The agency testified at (appellant's) personal appearance that it certified his position description correct in March or April of 1973. A review of (appellant's) position description reveals that the incumbent provides specialized managerial and administrative support to the Aircraft Management Branch Chief and that these duties extend to specific programs for which the Branch Chief is responsible. It is these duties on which the incumbent of the position was required to spend all or a major portion of his time, notwithstanding the fact that at the time of the transfer of function the number and extent of programs for which the Branch Chief was responsible was evidently limited. Accordingly, the Board finds that when operations under the jurisdiction of the Aircraft Management Branch were transferred to FINFO (Oklahoma Region), the (appellant) was properly identified with the transferring function.
 
 
 29
 (A.R. 156-57.)
 
 
 30
 We assume without deciding that the Board properly held that a GS-13 grade could not properly have been supported by the aircraft rental functions. The Board erred significantly, however, when it failed to recognize its duties under FPM 351, Subch. 1-11 (1973), which provides:
 
 
 31
 An agency should insure before a reduction in force (and we might add before a transfer of function) that . . . new or revised positions have been established where there have been recent substantial changes in continuing assignments . . .
 
 
 32
 . . . When the commission finds on appeal or otherwise that irregularities have resulted or will result in violation of employee rights or equities, the agency will be required to take appropriate corrective action.
 
 
 33
 The appropriate corrective action is clearly spelled out in FPM 351, Subch. 2-6 (1973), quoted supra, and was recognized by the hearing examiner who held: "(I)f the duties being performed by appellant were not supportive of a position at appellant's grade level, institution of reduction in force procedures at the Southwest Region would have been proper." (A.R. 136.)
 
 
 34
 The Board's interpretation of grade-controlling duties as being conclusively determined by the agency's position description on paper, without regard to its accuracy or currency, is clearly erroneous and inconsistent with the regulations. FPM 312, Subch. 3-2(b) (1972), provides that a position description should "provide an official record of a decision by the responsible management official that certain work is to be performed by an employee." The regulations further provide that a properly maintained position description is merely "useful . . . (a)s a basic evidence in appeal cases." Id. Thus, even if it were accurate, appellant's position description of record should properly have been considered by the Board as "useful," although not conclusive, evidence of his grade-controlling duties. Logic alone would dictate that the usefulness of any written statement as proof of its content is necessarily linked to its accuracy. Therefore, the gross inaccuracy of the position description resulting from the agency's own failure to comply with prescribed record keeping procedures effectively undermines any evidentiary usefulness it otherwise might provide. We also observe that as between duties and responsibilities actually performed and those merely listed in obsolete job descriptions, but not performed, the former must carry greater evidentiary weight in any rational standard of what determines grade-controlling duties. "The responsibilities performed should dictate the position description; (the Commission's) advocacy of the inverse proposition is misguided." Rowe v. McLucas, 437 F.Supp. 704, 706 (D.D.C.1977).
 
 
 35
 We conclude that there is no rational basis in the law for the Board's determination that appellant was in any way identified with the transferring function of the program control officer. His reassignment to the Oklahoma Region is fatally defective and, having improperly gained appellant as an employee, the Oklahoma Region lacked jurisdiction to subsequently process the RIF action by which he was downgraded to a GS-12 position.
 
 ADVERSE ACTION
 
 36
 Appellant's adverse action claim is based upon an alleged "reduction in rank," i. e., reduction in his relative standing to the FAA Administrator (not a reduction in grade from GS-13 to GS-12 as the trial court erroneously supposed) which resulted from the challenged transfer. Since we hold that appellant's purported transfer was invalid, we need not consider whether he would have suffered a reduction in rank under the laws governing adverse action had the transfer been valid.
 
 CONCLUSION
 
 37
 Although the district court articulated the appropriate standard of review, it erred in holding that there was a rational basis in the law to support the decision of the Board. The judgment appealed from is accordingly reversed and the case is remanded to the district court for a determination of damages. On remand the district court also shall order reinstatement of appellant to the competitive area, position, grade and organizational rank in the FAA he occupied immediately prior to July 8, 1973. Recognizing the possibility that appellant's duties and responsibilities may not support his position following reinstatement, we trust the agency will accord him his full rights under the law in any future personnel action.
 
 
 
 [1]
 The designation "A.R." refers to the Administrative Record. The designation "T.R." refers to the Trial Record of the district court
 M 351, Appendix C, further explains: