**SEATRAIN INTERNATIONAL, S.A., Petitioner,**

v.

**FEDERAL MARITIME COMMISSION and United States of America, Respondents,**

**Japan/Korea-Atlantic and Gulf Freight Conference, Intervenor.**

No. 77–1542.

United States Court of Appeals, District of Columbia Circuit.

April 12, 1979.

Neal M. Mayer and Paul D. Coleman, Washington, D. C., were on the supplemental brief for petitioner.

Joseph N. Ingolia, Gen. Counsel, Edward G. Gruis, Deputy Gen. Counsel, and C. Jonathan Benner, Atty., Federal Maritime Commission, Washington, D. C., were on the supplemental brief for respondent Federal Maritime Commission.

John H. Shenefield, Asst. Atty. Gen., and Barry Grossman and Robert J. Wiggers, Attys., Dept. of Justice, Washington, D. C.,

were on the supplemental memorandum for respondent United States of America.

Charles F. Warren and George A. Quadrino, Washington, D. C., were on the supplemental brief for intervenor.

Supplemental Opinion on Remand

Before WRIGHT, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges.

Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Chief Judge:

Petitioner Seatrain International, S.A. (Seatrain) challenges an order of the Federal Maritime Commission (FMC) that followed a remand from this court under Section 15 of the Shipping Act of 1916.[1] We remanded the record in this case for consideration of the antitrust implications of an 18-month extension of the authority of the Japan/Korea-Atlantic & Gulf Freight Conference (JKAG) to establish "intermodal" service between Asian ports and *inland points* in the United States.[2] Although the challenged authority for combined land and water carriage has now expired, petitioner

argues that this court should vacate the Commission's order as not satisfying the terms of the remand. We agree.

I

Acting under Section 15, which requires FMC approval of all services offered by shipping conferences, the Commission granted JKAG authority for intermodal service to Atlantic and Gulf Coast ports for three 18-month periods after 1973.[3] In 1977 the Conference, which had not initiated any service under its intermodal authority, requested an indefinite extension of that authority.[4] JKAG also requested deletion of the Commission's requirement that a Conference tariff would supersede an intermodal tariff filed independently by a member of JKAG only when both offered "comparable rates, terms, and conditions of carriage."[5] Objections were filed by Seatrain[6] and by Lykes Brothers Steamship Company (Lykes),[7] the only member of JKAG that did not also belong to the Trans Pacific Freight Conference of Japan & Korea (TPF), a competing conference serving Pacific Coast ports under its own intermo-

---

1. 46 U.S.C. § 814 (1970). The relevant portion of the statute provides:

    The Commission shall * * * disapprove, cancel or modify any agreement [among carriers], or any modification or cancellation thereof, * * * that it finds to be unjustly discriminatory or unfair * * *, or to operate to the detriment of the commerce of the United States, or to be contrary to the public interest, or to be in violation of this chapter, * * *."

2. *Seatrain International, S.A. v. FMC,* 189 U.S. App.D.C. 388, 584 F.2d 546 (1978). Intermodal service uses both land and water carriers to transport goods, usually in containerized shipments, from overseas ports, through United States ports to destinations either inland or on other coasts of this country. The FMC regulates the ocean portion of such service, and the Interstate Commerce Commission has jurisdiction over the inland stretches. *Commonwealth of Pennsylvania v. ICC,* 182 U.S.App.D.C. 280, 561 F.2d 278 (1977).

3. *See* FMC Agreement No. 3103 (Feb. 1, 1973), Joint Appendix (JA) 1–20; FMC Agreement No. 3103–53 (Jan. 22, 1974), JA 25–26; FMC

Agreement No. 3103–62 (Nov. 4, 1975), JA 36–38.

4. Notice of this request was published in the *Federal Register.* 42 Fed.Reg. 14771 (1977), JA 53.

5. This provision would reduce the anticompetitive effect of the Conference tariff by limiting its preemption of intermodal service schedules of member shipping lines.

6. Protest and Request for Hearing of Seatrain International, S.A. (March 28, 1977), JA 134–142.

7. Protest of Lykes Brothers Steamship Co., Inc. (April 15, 1977), JA 144–155. Even though Lykes did not seek this court's review of the FMC order, the Commission must deal with the issues raised in Lykes' protest. The FMC has an obligation to "explore[ ] sua sponte" anticompetitive issues in a regulatory action. *Marine Space Enclosures, Inc. v. FMC,* 137 U.S. App.D.C. 9, 17, 420 F.2d 577, 585 (1969). That obligation can be no less when such questions are raised before the agency, regardless of the subsequent conduct of the party.

dal tariff.[8] In May 1977 the Commission approved an 18-month extension of JKAG's authority, but refused to remove the provision on superseding tariffs.[9]

Seatrain petitioned this court for review of the FMC's order. In an opinion issued July 28, 1978 this panel found no "indication in the Commission's decision that it considered the antitrust implications of extending JKAG intermodal tariff authority," and remanded the record for "further consideration" of competition questions.[10] Although we saw no need for a full evidentiary hearing on remand, we ordered the agency to "conduct, whatever proceedings are necessary for it to secure sufficient information so that its final decision will reflect 'a consideration of the relevant factors.'"[11]

The Commission affirmed its May 1977 extension of authority in an order (hereinafter referred to as Order on Remand) issued November 24, 1978, the expiration date for the intermodal authority that was the subject of the May 1977 order.[12] The FMC had conducted no further proceedings, noting that its decision

> relies on information available to it at the time of its earlier Order. This Order should be considered a restatement and amplification of considerations which led

us to conditionally approve the Agreement in our Order of May 18, 1977. * * * [13]

The Commission conceded that its May 1977 order had approved "the concerted fixing of rates by Conference members" which is a "violation of the antitrust laws,"[14] but the agency presented no new analysis of the antitrust implications of approving JKAG's request. Instead, the substance of the Order on Remand merely listed the positive features of the FMC action that, under the controlling Supreme Court cases,[15] would justify such an anticompetitive arrangement.

The primary benefit cited by the agency was the greater efficiency of intermodal service.[16] The Commission also argued that JKAG's recent loss of trade to TPF's intermodal service demonstrated a transportation need for its action.[17] The FMC defended its grant of authority to the Conference, rather than to individual lines, because the shipping conferences, "'as the dominant commercial units in this trade, * * * should be at the forefront in stimulating and encouraging improvements in transportation.'"[18] After all, the FMC pointed out, of the 13 JKAG members, only Lykes had

---

8. As their names suggest, the conferences are organized according to which American coast the carriers serve. TPF includes carriers between Japan and Korea and American Pacific ports; JKAG includes shipping lines carrying freight between Japan and Korea and Atlantic and Gulf ports. The 12 firms belonging to both conferences are Barber Blue Sea Line, Japan Line, Ltd., Kawasaki Kisen Kaisha, Ltd., Korea Shipping Corp., Mitsui O.S.K. Lines, Ltd., A. P. Moller-Maersk Line, Nippon Yusen Kaisha, Orient Overseas Container Lines, Inc., Sea-Land Service, Inc., United States Lines, Inc., Yamashita-Shinnihon Steamship Co., Ltd., and Zim Container Service F.E.

9. Conditional Approval of Agreement No. 3103–64 (May 18, 1977), JA 159–165. The Commission also ordered that any Conference intermodal tariff using a particular mode of land transport would not supersede a member line's tariff using a different mode of land carriage. *Id.* at 164.

10. *Seatrain International, S.A. v. FMC, supra* note 2, 189 U.S.App.D.C. at 392, 584 F.2d at 550.

11. *Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

12. Conditional Approval of Agreement No. 3103–64 (Nov. 24, 1978) (hereinafter cited as Order on Remand).

13. *Id.* at 1–2.

14. *Id.* at 3.

15. *See* Part II *infra.*

16. Order on Remand, *supra* note 12, at 11 (intermodal service means "reduced transit time, reduced documentation, increased cargo security, and the elimination of certain delays and extra handling expenses at discharge ports").

17. *Id.* at 12.

18. *Id.* at 20 (quoting *Disposition of Container Marine Lines,* 11 FMC 475, 482 (1969)).

established independent intermodal tariffs. Finally, the Commission stressed the limitations on its action: the restriction of JKAG's authority to 18 months and the provision that Conference intermodal tariffs would supersede only "comparable" individual tariffs.[19]

Five days after issuing the Order on Remand the Commission rejected JKAG's request for another extension of its intermodal authority (hereinafter referred to as Fifth Extension Order).[20] Although that action is not directly before us on review, it is clearly relevant to any consideration of the Order on Remand and contrasts sharply with that decision. In the Fifth Extension Order the Commission emphasized that JKAG still had not issued an intermodal tariff.[21] The FMC reviewed the Conference's pricing alternatives for intermodal offerings, concluding that "the prospects of immediate viable conference intermodal service appear slim."[22] In contrast to its contention in the Order on Remand that conferences would spearhead introduction of intermodal service, the Commission held that "individual carriers [must] take the lead in marketing a service that may prove beneficial to shippers and commerce. A continuation of the conference's intermodal authority may delay those individual efforts and resultant benefits."[23]

## II

■ Because the 1977 grant of intermodal authority has terminated and JKAG's request for an additional extension was denied, respondents argue that we should not reach the merits of the case. We do not find this case moot. As Justice McKenna wrote in *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911), when questions are likely to arise repeatedly, "their consideration ought not to be, as they might be, defeated, by short term orders, capable of repetition, yet evading review * * *."[24] Even though the JKAG order has expired, it raises questions—about the nature of the Commission's proceedings on remand and its analysis of antitrust issues—that will likely recur. The use of short term orders should not frustrate judicial review. Accordingly, we will consider the Order on Remand under the principles outlined in *United States Lines, Inc. v. FMC*[25] for review under the Administrative Procedure Act (APA) and Section 15 of the Shipping Act.

■ As we stated in *United States Lines,*[26] we must undertake a "searching and careful" inquiry[27] to determine whether the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1976). A court may not, of course, substitute its judgment for the agency's, but must determine whether the agency has "adequately considered all relevant factors"[28] and if there is "a rational

19. *Id.* at 14–15. The agency also cited the limit on Conference tariff preemption of individual tariffs using different land transport methods. *See* note 9 *supra.*

20. Conditional Disapproval of Agreement No. 3103–67 (Nov. 29, 1978) (hereinafter cited as Fifth Extension Order).

21. *Id.* at 4.

22. *Id.* at 5.

23. *Id.* at 6.

24. *See Carroll v. President and Comm'rs of Princess Anne,* 393 U.S. 175, 178–179, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968).

25. *United States Lines, Inc. v. FMC,* 189 U.S. App.D.C. 361, 584 F.2d 519 (1978). The opinion in *United States Lines* was issued on the same day as our first decision in this case.

26. *Id.* at 525–527.

27. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *United States Lines, Inc. v. FMC, supra* note 25, 189 U.S.App.D.C. at 368, 584 F.2d at 526.

28. *Home Box Office, Inc. v. FCC,* 185 U.S.App. D.C. 142, 168, 567 F.2d 9, 35 (*per curiam*), *cert. denied,* 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977).

connection between the facts found and the choice made." [29]

■ We must also apply to this case our understanding of the FMC's obligation under Section 15 of the Shipping Act to consider possible anticompetitive consequences of its actions. In *Isbrandtsen Co. v. United States,* 93 U.S.App.D.C. 293, 299, 211 F.2d 51, 57 (1954), this court held that the FMC can exercise its statutory power to grant antitrust immunity to shipping conferences only after

> scrutiniz[ing] the agreement to make sure that the conduct thus legalized does not invade the prohibitions of the anti-trust laws any more than is necessary to serve the purposes of the regulatory statute. * * *

(Footnote omitted.) As set forth by the Supreme Court last Term,

> the Commission *must* "consider the antitrust implications of an agreement before approving it," *FMC v. Seatrain Lines, Inc.,* 411 U.S. 726, 739, [93 S.Ct. 1773, 1782, 36 L.Ed.2d 620] (1973), and should approve an anticompetitive agreement only if it is " 'required by a serious transportation need, necessary to secure important public benefits or in furtherance of a valid regulatory purpose of the Shipping Act.' " *FMC v. Svenska Amerika Linien,* 390 U.S. 238, 243, [88 S.Ct. 1005, 1009, 19 L.Ed.2d 1071] (1968). * * * [30]

Antitrust considerations thus must be fully considered and anticompetitive agreements can be approved only if there are "serious" and "important" advantages for the public.

## III

■ The Order on Remand is inadequate on two independent grounds: (A) the agency's action was flawed by its refusal to consider events after the May 1977 order was issued, and (B) the Commission's antitrust analysis incorrectly gauged the public benefits of extending JKAG's intermodal authority and the transportation needs served by such action.

### A

JKAG's intermodal authority was granted after a proceeding designed to enhance administrative "flexibility" while providing concerned parties an opportunity to present their views to the Commission.[31] Our prior opinion directed the Commission to conduct any proceedings *necessary* to establish the factual basis for its action. This direction would not have been mandatory if the administrative record had already contained all information needed to assess the issues on remand.[32] In this case, however, the remand took place 14 months after the Commission's original order was issued and involved continued ratemaking authority, not a retrospective adjudication or sanctioning. Recent occurrences might well have influenced the FMC's view of JKAG's request for conference intermodal authority, especially since factual circumstances are critical to any antitrust findings. We see no rational basis for the Commission's decision to shut its eyes to the events of the recent past and insulate its action from relevant developments within the industry and within the Commission.

Our position follows the Supreme Court's holding in *FCC v. Pottsville Broadcasting*

**29.** *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).

**30.** *FMC v. Pacific Maritime Ass'n,* 435 U.S. 40, 53–54, 98 S.Ct. 927, 935, 55 L.Ed.2d 96 (1978) (emphasis in original).

**31.** *Seatrain International, S.A. v. FMC, supra* note 2, 189 U.S.App.D.C. at 392, 584 F.2d at 550. Although § 15 of the Shipping Act provides for "notice and hearing," 46 U.S.C. § 814 (1976), it does not require that Commission action "be made on the record." 5 U.S.C. § 553

(1976). Consequently, the procedures required under §§ 556 and 557 of the APA were not applicable. *United States Lines, Inc. v. FMC, supra* note 25, 189 U.S.App.D.C. at 378–379, 584 F.2d at 536–537.

**32.** *See Ford Motor Co. v. NLRB,* 305 U.S. 364, 374, 59 S.Ct. 301, 307, 83 L.Ed. 221 (1939) ("If findings are lacking which may properly be made upon the evidence already received, the court does not require the evidence to be reheard.").

*Co.,* 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940), concerning an application for a broadcast license. The Federal Communications Commission's denial of the application was reversed by the Court of Appeals because the agency had misinterpreted Pennsylvania securities law.[33] On remand the agency proposed to consider Pottsville's application along with two others that had been filed for the same frequency since its earlier ruling. The Supreme Court upheld the Commission's procedure, stating that the history of the litigation could not "create rights of priority" for Pottsville: "The Commission's responsibility at all times is to measure applications by the [statutory] standard * * *." 309 U.S. at 145, 60 S.Ct. at 442. The Court held generally that

> an administrative determination in which is embedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge. * * *

*Id.*

Like the Communications Commission in *Pottsville,* the Maritime Commission was not free in this case to ignore events between its initial action and the remand. By cutting off its inquiry at May 1977, the FMC neglected intervening technological, commercial, and economic developments that might have focused particular issues, raised further questions, or disposed of others. For example, Lykes had argued that JKAG was suffering a serious loss in cargo to TPF's intermodal service, and that since the other 12 members of JKAG belonged to TPF, Lykes was the particular victim of JKAG's continuing failure to establish an intermodal tariff. On remand several questions should have been reviewed by the Commission: What was the current status of the competition between JKAG and

TPF? How was Lykes' own intermodal service faring? What factual basis existed for the allegation that the 12 shipping lines that belonged to both conferences were using the TPF authority and were not interested in developing intermodal service to Atlantic and Gulf ports?

None of these points is broached in the Order on Remand. Instead, the order predicts optimistically that "the publication of an intermodal tariff by the Conference will permit an alternative transportation service heretofore unavailable to the public."[34] Yet in the *West African* case in April 1978 the Commission concluded that conference intermodal tariffs that "requir[e] member lines to provide extended advance notice" of modifications of service have "not brought about the rapid development of intermodal transportation."[35] There was such an advance notice provision in the JKAG agreement.[36] And in the Fifth Extension Order the Commission, referring to the 12 firms that belong to both JKAG and TPF, concluded that "immediate viable conference intermodal service" was not likely because JKAG members were using the TPF intermodal tariffs.[37] The FMC observed that "[a] continuation of the conference's intermodal authority may delay" the introduction of such service by individual lines.[38]

The Commission also explained in its Order on Remand that it was not applying the principles of the *West African* case because "[t]o inject later developments into the consideration of the remanded proceeding could well have the effect of creating a new proceeding before the Court of Appeals * * *."[39] The agency's concern was misplaced. Its task was to evaluate antitrust issues in a rulemaking proceeding as part of its ongoing responsibility to chart regulatory policy for the shipping industry; such policy decisions must be firmly grounded in

---

33. *Pottsville Broadcasting Co. v. FCC,* 69 U.S. App.D.C. 7, 9, 98 F.2d 288, 290 (1938).

34. Order on Remand, *supra* note 12, at 10–11.

35. *American West African Freight Conference Agreement,* No. 7680–36 (April 13, 1978), at 3.

36. *See* text at note 47 *infra.*

37. Fifth Extension Order, *supra* note 20, at 5.

38. *Id.* at 6.

39. Order on Remand, *supra* note 12, at 7.

their factual context or the agency risks taking inappropriate or irrelevant action.[40]

We emphasize that our earlier opinion expressly stated that the Commission had no duty to provide full "evidentiary" hearings.[41] We have no wish to straitjacket the agency with procedural requirements unrelated to its responsibilities.[42] Still, the Commission must perform its duties with a full understanding of the economic and commercial situation. We cannot find that the Order on Remand, reached without consideration of then-current industry conditions or agency policy, was based on a review of all relevant factors.

B

Even from the Commission's vantage point of May 1977 the Order on Remand cannot withstand scrutiny. The FMC extended JKAG's intermodal tariff authority, despite the consequent anticompetitive effects, because the agency found there were substantial "public benefits" from and "transportation need" for Conference service. The Commission, however, either overlooked or misinterpreted several important features of the case that contradict the agency's findings of benefits and need.

According to the Order on Remand, the public benefits of granting JKAG's extension included

single factor through rates covering the movement of cargo from point of origin to point of destination, single or joint carrier responsibility, reduced transit time, reduced documentation, increased cargo security, and the elimination of certain delays and extra handling and expenses at discharge ports. * * * [43]

Of course, such advantages would be contingent on the viability of the Conference tariff itself. The Order on Remand fails to recognize substantial questions as to whether JKAG's intermodal service could succeed.

In its April 1977 protest Lykes argued that since the contemplated JKAG tariff involved neither a reduction in ocean freight rates nor revenue-splitting agreements with rail carriers, it could not conceivably compete with TPF's intermodal service, which included both features.[44] Thus if a JKAG tariff had been implemented, it could have constricted the ability of member lines to offer intermodal service [45] without providing viable Conference service.

The relationship between the terms of service considered by JKAG and those offered by TPF was clearly relevant to any estimate of the benefits likely from the proposed action. The Commission, however, completely ignored the question in both its May 1977 order and the Order on Remand now before us. The Commission's neglect of the question is even more surprising because the Fifth Extension Order was primarily based on a conclusion that JKAG's contemplated tariff *could not compete with TPF's*.[46] The Commission did not explain in the later order what developments suddenly revealed the force of Lykes' April 1977 protest, so we have no basis for

40. Although the Commission has not presented the argument before this court, it is possible that the agency restricted itself to pre-May 1977 events in an attempt to resolve this case before the relevant tariff authority expired. Since the order was issued four months after our remand and on the same day that JKAG's intermodal authority expired, this purpose appears not to have controlled the Commission's deliberations. If the FMC wanted more time to review the situation, it could have petitioned the court to transfer the issues on remand to the proceeding on JKAG's subsequent extension request, which culminated in the Fifth Extension Order. *See Nat'l Small Shipments Traffic Conf. v. ICC,* 191 U.S.App.D.C. 214, 223, 590 F.2d 345, 354 (1978).

41. *See United States v. Florida East Coast R. Co.,* 410 U.S. 224, 234–238, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973); *United States v. Allegheny-Ludlum Steel Corp.,* 406 U.S. 742, 754–758, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972).

42. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

43. Order on Remand, *supra* note 12, at 11.

44. JA 150.

45. *See* text at note 47 *infra*.

46. Fifth Extension Order, *supra* note 20, at 5.

concluding that the neglect in the Order on Remand of this pivotal question was reasonable.

The overlap in membership between JKAG and TPF raises further doubt as to the Commission's estimate of benefits. The 12 JKAG members with access to the TPF intermodal tariff may have had limited incentives to generate an additional intermodal service and thereby compete with themselves. The possibility emerges, without refutation by the FMC, that the majority of the Conference members wanted no JKAG intermodal tariff at all. So long as JKAG held intermodal authority, any Conference member maintaining an independent intermodal tariff had to provide 120-day notice to the Conference before modifying that independent tariff.[47] This requirement would both hinder the individual line's ability to adjust its service to swings in demand and give other Conference members a full opportunity to thwart any attempt to seize a temporary market opportunity. Although the Commission has subsequently withdrawn its approval of such notice requirements, we find no rational basis for its failure to consider whether JKAG wanted the intermodal authority as an anticompetitive tool.

Finally, the Commission provided no adequate explanation for its finding of a transportation need for the Conference, rather than individual carriers, to institute intermodal service. In the Fifth Extension Order the Commission itself questioned the wisdom of conference intermodal tariffs,[48] but the Order on Remand scarcely discussed the issue.[49] It seems at best naive to expect a cartel, which has no more important purpose than preserving stability in its industry,[50] to pioneer innovations.[51] In addition to doubts as to the commitment of the 12 members of JKAG and TPF to establishing JKAG intermodal tariffs, conferences, as collegial bodies, suffer certain drawbacks as economic entities. They cannot adjust their service offerings quickly to meet market changes because a consensus is required for action; and a tariff designed to satisfy 13 shipping lines is unlikely to be well suited to the facilities and resources of any one line. Thus conferences might well be viewed as less effective vehicles for implementing intermodal service. The Order on Remand, though, offered no adequate explanation of the transportation need for having conferences rather than individual carriers establish intermodal service.

Accordingly, the Commission's order is *Vacated.*

47. Order on Remand, *supra* note 12, at 7.

48. Fifth Extension Order, *supra* note 20, at 5–6.

49. Order on Remand, *supra* note 12, at 11 (pointing out that only Lykes was moving toward independent intermodal service).

50. *See* McGee, *Ocean Freight Rate Conferences and the American Merchant Marine,* 27 U.Chi. L.Rev. 191 (1960).

51. *See* Doerfer, *The Limits on Trade Secret Law Imposed by Federal Patent and Antitrust Supremacy,* 80 Harv.L.Rev. 1432, 1455 (1967).