**Robert E. KING, Plaintiff,**

v.

**Robert S. BERGLAND, in his official capacity as Secretary, United States Department of Agriculture; Grant Buntrock, in his official capacity as Deputy Administrator, Agricultural Stabilization and Conservation Service, Defendants.**

**Civ. A. No. 80–K–276.**

United States District Court, D. Colorado.

July 21, 1981.

Henry W. Ipsen, Denver, Colo., for plaintiff.

Roland J. Brumbaugh, Asst. U. S. Atty., Denver, Colo., for defendants.

## ORDER

KANE, District Judge.

Plaintiff seeks judicial review of an Agricultural Stabilization and Conservation Service (ASCS) decision denying his eligibility to receive prevented planting disaster payments under the 1978 Wheat Program. Plaintiff contends that ASCS' denial of the prevented planting payments was inconsistent with underlying statutory authority and supported by insufficient evidence. Defendants contend that their interpretation of the statutory provisions is reasonable and in any case their decisions are final and not subject to judicial review. Both sides have moved for summary judgment. Having carefully reviewed the briefs, pleadings, and administrative record I have concluded that there are no genuine issues of material fact and this case is ripe for determination.

## JUDICIAL REVIEW

■ Defendants contend that pursuant to 7 U.S.C. § 1385[1] this court has no authority to review the agency's factual determi-

nation which led to denial of plaintiff's claim. However, it is only on clear and convincing evidence of legislative intent that courts should consider restricting access to judicial review. *See e. g., Morris v. Gressette*, 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977); *Sabin v. Butz*, 515 F.2d 1061 (1975). In *Garvey v. Freeman*, 397 F.2d 600, 605 (10th Cir. 1968) the court held that § 1385 did not preclude judicial review of whether the agency's findings of fact were in conformity with the applicable regulations. *See also, Boyd v. Secretary of Agriculture*, 459 F.Supp. 418 (D.S.C.1978). Thus, this circuit has held that it could find no implication of congressional intent to preclude review in the finality provisions of § 1385. *Garvey v. Freeman*, 397 F.2d at 605. Thus it is clear that § 1385 does not preclude review in this case.

■ Defendants also maintain, however, that judicial review is precluded because the agency action in this case is committed to agency discretion pursuant to 5 U.S.C. § 701(a)(2). However, it is clear that agency action, discretionary or otherwise, is subject to judicial review. *See, Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Thus, the dispositive question is not whether judicial review is permissible, but rather what is the scope of that review.

■ In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 the Supreme Court held that the function of judicial review of informal agency action is to determine the authority of agency action, compliance by the agency with prescribed procedures and any claim that the action was arbitrary, capricious or an abuse of discretion. Although this requires a substantial inquiry, the ultimate standard of review is a narrow one. *See also, Henkle v. Campbell*, 626 F.2d 811 (10th Cir. 1980). I cannot substitute my judg-

1. 7 U.S.C. § 1385 provides: The facts constituting the basis for any Soil Conservation Act payment, any payment under the wheat, feed, grain, upland cotton, and rice programs authorized by the Agricultural Act of 1949 and this Act, any loan, or price support operation, or the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the Commodity Credit Corporation, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government.

ment for that of ASCS' but must instead determine whether the agency has considered all relevant factors and if its action has a rational basis. *C F & I Steel Corp. v. Economic Development Administration,* 624 F.2d 136 (10th Cir. 1980); *Seatrain International v. Federal Maritime Commission,* 598 F.2d 289 (D.C.Cir.1979). In addition, I am restricted to review based solely on the record, *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); thus the inquiry, grounds and analysis upon which the agency acted must be clearly disclosed therein. *American Petroleum Institute v. E.P.A.,* 540 F.2d 1023 (10th Cir. 1976), *cert. denied,* 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601 (1977). In light of the above, I now turn to the particulars of this program and this case.

## THE WHEAT PROGRAM

The Wheat Program is authorized by § 107A of the Agricultural Act of 1949, 7 U.S.C. § 1445b. Authority to administer the program has been delegated to ASCS by the Secretary of Agriculture pursuant to 7 C.F.R. § 2.65. § 107A(b)(2)(A) of the Act provides for prevented planting disaster payments as follows:

> Effective only with respect to the 1978, 1979 and 1980 crops of wheat, if the Secretary determines that the producers on a farm are prevented from planting any portion of the acreage intended for *wheat or other nonconserving crops because of drought, flood or other natural disaster, or other condition beyond the control of the producers,* the Secretary shall make prevented planting disaster payments to the producers not to exceed the acreage planted to wheat for harvest (including any acreage which the producers were prevented from planting to wheat or other nonconserving crop in lieu of wheat because of drought, flood, . . . .) (emphasis added.)

The regulations promulgated pursuant to this section are found at 7 C.F.R. § 713.-16(a)(2)(i) and provide as follows:

> (2) Acreage eligible for payment. The acreage eligible for payment shall equal the smaller of:
>
> (i) The acreage of the crop intended for harvest within program requirements but which could not be planted to the crop or other annual nonconserving crops because of a natural disaster or other condition beyond the producer's control.

Defendants interpret these regulations to mean that the producer is eligible for prevented planting disaster payments under the Wheat Program when the producer is prevented from planting the program crop (i. e., wheat) and he also intended, but was prevented from planting, a secondary nonconserving crop (i. e., grain sorgum).

According to ASCS procedures the producer is required to apply for prevented planting payments within five days of the end of the established normal planting period for each crop.[2] The ASCS committee then considers the producers intent to plant the crop, along with supplies purchased, equipment on hand, loans, etc. The only exception to the requirement of being unable to plant a secondary nonconserving crop is where the producer normally does not produce or have the necessary equipment to produce the nonconserving crop.

## THE FACTS

Plaintiff is the operator of three farms in Pueblo County, Colorado. Winter wheat is the primary crop in the region and is usually planted in the early fall and harvested the following June or July. Plaintiff appears to be primarily a winter wheat farmer, but he has planted grain sorgum. Plaintiff has also received prevented planting disaster payments for grain sorgum and wheat during the 1975, 1976 and 1977 crop years. Plaintiff applied for prevented planting payments for grain sorgum because of drought conditions in the 1978 crop year. However, this request was denied because plaintiff failed adequately to pre-

---

**2.** The record indicates that plaintiff did not file in a timely fashion, although this was not used as a basis for denial.

pare his farms for planting in a timely fashion. This decision was affirmed on appeal. The record indicates that plaintiff did not purchase seed or fertilizer and tardily applied to lease the appropriate equipment to plant grain sorgum. Plaintiff appears to have made a good faith effort to plant in 1977, but not 1978, although the record indicates that there was more rain and less wind in 1978 than in 1977.

Plaintiff asserts, in part, as a defense a cease and desist order issued by the Pueblo City-County Health Department on August 23, 1976. The order required plaintiff to take steps to prevent wind erosion of the soil. However this order was withdrawn on June 28, 1977, a year before any grain sorgum would be planted for 1978. Thus there is not much significance in the cease and desist order.

Plaintiff also contends that under § 107A of the act he is eligible for wheat payments regardless of whether he intended to plant a secondary nonconserving crop. The agency contends that to be eligible for the payments he must be prevented from planting both the program crop and the secondary nonconserving crop. In support of the agency interpretation of the regulations and the statute, defendants cite the nonconserving crop language ("the producer must be prevented from planting [the program crop] or other nonconserving crop due to . . ."). This language appears in the Wheat Program provisions (7 U.S.C. § 1445b) and is repeated in the provisions pertaining to the Feed Grain program (7 U.S.C. § 1444c) and the Rice Program (7 U.S.C. § 1441(g)). Each time the language appears the name of the program crop is changed accordingly. Defendants maintain that had congress intended the statute to be interpreted according to plaintiff's view, it would have phrased the prevented planting disaster payment provision in general terms (i. e., the producer must be prevented from planting any nonconserving crop due to . . .), excluding the name of the program crop. Further, defendants note that the nonconserving crop language has been omitted from the Cotton Program legislation (7 U.S.C. § 1444(e)). This also indicates

congress' intent to impose the requirement that producers be prevented from planting both the program crop and a secondary nonconserving crop in order to be eligible for prevented planting disaster payments.

Plaintiff contends that all of this is irrelevant because the statute is unambiguous and must be given effect according to its plain and obvious meaning. *See, United States v. Western Pacific R.R. Co.*, 385 F.2d 161 (10th Cir. 1967), *cert. denied, Denver & R.G. R. Co. v. United States*, 391 U.S. 919, 88 S.Ct. 1805, 20 L.Ed.2d 656 (1968). If the language of a statute is clear and its purpose appears with reasonable certainty, there is no need to resort to other rules of construction to ascertain its meaning. *See, United States v. Ray*, 488 F.2d 15 (10th Cir. 1973). Finally, plaintiffs contend that the waiver provisions from the secondary prevented planting requirement in cases where the producer does not normally produce the nonconserving crop is tacit recognition that the statute only imposes a one crop planting requirement. Plaintiff's position is without merit.

An agency's interpretation of its own rules and regulations must be sustained and applied as controlling law unless that interpretation is plainly erroneous or inconsistent with the regulations. *Hurley v. United States*, 575 F.2d 792 (10th Cir. 1978). As the court stated in *Kantor v. United States*, 205 Ct.Cl. 1, 7 (1974):

[t]he rule is well established that the construction given to any law or regulation by the administrative agency charged by statute with carrying it out, is entitled to great weight by the courts and ought not to be overruled without very compelling reasons. Such reasons would include a construction clearly wrong, contrary to the statute or to congressional intent, or in excess of authority conferred by law. To sustain the administrative construction, it is not necessary for a court to find that the construction is the only reasonable one or even that it produces the same result the court would have reached in the first instance in judicial proceedings. (Citations omitted.)

 It is clear that ASCS' interpretation of the statute is reasonable and not clearly erroneous. The statutory language is subject to the interpretations given by both parties, although its phrasing in the rice, grain and feed programs along with its omittance from the cotton program lends support to defendants' view. In addition, the waiver provisions are not unreasonable or a tacit approval of plaintiff's view given the overall purpose of the program. The aim of the program is to protect farmers who plan, but are prevented from planting their crops because of certain natural disasters. If the farmer cannot plant the program crop, but can plant the nonconserving crop, he is not prevented from planting due to the listed disasters and thus should not be reimbursed. However, the act is not designed to impose planting requirements on those who do not normally plant such crops. Thus, if a producer does not have the equipment needed to plant the nonconserving crop he is not required to obtain it. Therefore, the waiver provisions are not a tacit admission that the nonconserving crop need not be planted to qualify for prevented planting payments.

 Finally, the principle of according great deference to an agency's interpretation of a statute is even stronger when the administrative interpretation is supported by long-standing administrative practice. *N.L.R.B. v. Bell Aerospace Co.*, 416 U.S. 267, 274–275, 94 S.Ct. 1757, 1761–1762, 40 L.Ed.2d 134 (1974); *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 381–382, 89 S.Ct. 1794, 1801–1802, 23 L.Ed.2d 371 (1968); *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1964); *Universal Battery Co. v. U. S.*, 281 U.S. 580, 583, 50 S.Ct. 422, 423, 74 L.Ed. 1051 (1930). The Supreme Court stated in *N.L.R.B.· v. Bell Aerospace Co.*, 416 U.S. at 274–275, 94 S.Ct. at 1761–1762:

[A] Court may accord great weight to the long-standing interpretation placed on a statute by an agency charged with its administration. This is especially so where Congress has re-enacted the statute without pertinent change. In these circumstances, congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is one intended by Congress.

The administrative interpretation in this case has been left undisturbed by congress. When enacting the Food and Agricultural Act of 1977 (Pub.L. 95–113, 91 Stat. 913), congress retained the secondary nonconserving crop language of the Agriculture and Consumer Protection Act of 1973. Thus, it appears that congress approves of the administrative interpretation in this case. It is not the role of this court to overturn it.

 The record establishes that plaintiff failed to meet the eligibility requirements of the prevented planting program. He failed to plant the program crop and the secondary nonconserving crop, although he had the necessary means to do so. Defendants acted in a manner consistent with the underlying statutory authority and the denial of prevented planting payments to plaintiff was not arbitrary, capricious or erroneous. Accordingly, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that defendants' motion for summary judgment is granted. Each party to bear its own costs.